**Brian W. Steffensen (3092)**
**STEFFENSEN ❖ LAW ❖ OFFICE**
448 East 400 South, Suite 100
Salt Lake City, Utah 84111
Telephone (801) 485-3707
Facsimile (801) 485-7140
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**STATE OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| Hugo Martinez,<br><br>　　　　Plaintiff,<br>vs.<br><br>Butch Johnson, et al.,<br>　　　Defendant. | Plaintiff's Joint (a) Reply Memorandum in Support of Plaintiffs' Motion for Summary Judgment and (b) Memorandum in Opposition to Defendants' Cross Motion for Summary Judgment<br><br>Civil No. 2:11-cv-00157-DN<br>Judge:<br>Magistrate Judge Nuffer |

In deciding the Martinezes' motion for partial summary judgment against the Defendants, and evaluating the merits of these Attorney Defendants' opposition and Cross Motion for Summary Judgment, the Court should keep in mind the following principles:

1.　　**The Judicial Proceedings Privilege Does Not Apply to the FDCPA.** The

FDCPA is a Federal law which regulates and governs the conduct of debt collectors and

debt collecting lawyers committed during the course of litigation to collect a debt. This

was decided by the United States Supreme Court in the case of Heintz v. Jenkins, 514

U.S. 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995) (" we agree with the Seventh Circuit

that the [FDCPA] applies to attorneys who "regularly" engage in

consumer-debt-collection activity, even when that activity consists of litigation).; See also Judge Dale Kimball's opinion in <u>Brown v. Constantino</u>, (Utah 10-26-2009), Civil No. 2:09-cv-00357 DAK) , in which Judge Kimball  ruled that the Judicial Proceedings Privilege did not apply to claims brought under the FDCPA or the UCSPA

The Defendants' assertion that nothing that they did or do during the course of debt collection activity and then litigation was/is subject to the FDCPA is patently false. According to the United States Supreme Court, the judicial proceedings privilege does not bar the Martinezes' FDCPA claims herein.

2. **The Martinezes Need to Prove Only One FDCPA Violation in Order to Prevail on their Complaint**.  As held by the 2nd Circuit quite some time ago, a claimant need only prove one violation of the FDCPA in order to be entitled to judgment.  <u>Bentley v. Great Lakes Collection Bureau, Inc</u>., 6 F. 3d 60 (2d. Cir 1993).

In this case, the Martinezes have identified and proven dozens and dozens of violations.  This Court will find many more than the one violation necessary to justify granting summary  judgment for the Martinezes herein.

3. **The FDCPA is a Strict Liability Statute.  Intent Need Not be Alleged or Proven.**  <u>Larsen v. JBC Legal Group</u>, 533 F. Supp. 2d  290 (2008); (See numerous citations in support of this proposition set forth in Exhibit A) To establish a violation of the FDCPA, the intent of the Defendant is irrelevant. <u>Russell v.</u>

<u>Equifax ARS</u>, 74 F. 3d. 30, 33 (2nd Cir. 1997); (See numerous citations in support of this proposition set forth in Exhibit B) .  The Plaintiff merely needs to show that the Defendant is a debt collector who was collecting a debt when the FDCPA violation occurred.

Consequently, if the conduct violates the FDCPA, the Defendants are strictly liable unless they can prove that the violation was a "bona fide error" and that they had procedures in place which they followed designed to avoid the particular type of violation.

The Martinezes will demonstrate that the Defendants are not able to show that their violations were the result of any bona fide errors which could not have been caught and/or avoided by following reasonable procedures.

4.    **There are no Unimportant FDCPA Provisions or Violations.  The Statute is to be Construed Strictly in Favor of Protecting the Consumer**.

Because the FDCPA is a strict liability statute, **there are no unimportant violations**. <u>Bentley</u> supra at 63.  Additionally, "(b)ecause it is designed to protect consumers, the FDCPA is, in general, liberally construed in favor of consumers to effect its purpose." <u>Blair v. Sherman Acquisition, No. 04 </u>Civ 4718, 2004 WL 2870080 at 2 (N.D. Ill. Dec.13, 2004) as quoted in <u>Foti v. NCO Financial Systems</u>, 424 F. Supp. 2d. 655 (SDNY 2006).

As an example of how these principles apply to this case, Johnson Mark claims that it "made a simple mistake" by failing to notice that Martinez sent them a letter exercising his

1692g right to request verification of the debt and by failing to satisfy their 1692g obligation to provide such requested verification before they continued any further debt collection activity.

After Martinez sent this letter requesting verification, Johnson Mark was required by law to cease all debt collection activities until it provided the requested "proof" of the debt.

Johnson Mark admits that it violated 1692g by taking at least a half-dozen debt collection actions after it received Martinez' request for verification and before it made any attempt to verify (i.e., provide "proof" of the debt).

Martinez does not have to prove that Johnson Mark knew that it was violating 1692g via these actions. Martinez simply has to prove that he demanded verification and that Johnson Mark continued to try to collect the debt before it provided the statutorily required "proof" of the debt. Martinez' motion provides this proof and Johnson Mark admits the facts.

Johnson Mark attempts to excuse these half-dozen violations by asserting a "bona fide error" defense.  However, Johnson Mark has to prove that it had procedures in place to catch and/or avoid the error and that it followed those procedures.

Johnson Mark's defense seems to be (a) we know that we have to comply with 1692g, (b) we try to comply with 1692g, so ( c) we are not liable if we don't.   This is not sufficient to satisfy the requirements of the bona fide error defense.

What are the procedures that are in place?

How did they follow them?

4

The simplest procedure which could have been, but which was not, followed was to require someone to look in the file and see if there was a 1692g request for verification from the consumer before each subsequent debt collection action is/was taken.  If anyone had simply looked in the file to double check, they would have seen the admittedly received request for verification and would have caught themselves before they took the next debt collection step.

The fact that Johnson Mark violated 1692g at least a half dozen times over a nine month period is proof that there were in fact no procedures in place which were followed to catch and avoid this error.  The mere claim that "we simply made a mistake" falls grossly short of satisfying the "bona fide error" defense.

These are just six or so of the many violations identified and proven by the Martinezes in their memorandum which are not and can not be excused by the "bona fide error" defense.

Defendants strive mightily to explain away their wrongful behavior, but at the end of the day all Martinez has to show is that they committed at least  one consumer law violation in order to prevail.  Out of the dozens and dozens of violations identified by Martinez, at least one will be found to be without dispute and to be a consumer law violation.

This will entitled the Martinez to summary judgment as requested.

Correspondingly, the Defendants have not and can not explain or excuse away all of the proffered examples of consumer law violations – i.e., "punches."

The defendants' cross motion must therefore be denied.

## Plaintiff's Statement of Undisputed Facts

The Defendants do not dispute Statements numbered: 1-6, 9, 25, 26, 39, 68, 70, 71, 75, 77, 78, 85 and 86.  Those are all deemed admitted.

The Defendants attempt to dispute the following statements, but a close examination of the "dispute" reveals that the statements are not in fact disputed: 7, 8, 12-15, 17-24, 39-38, 40-45, 47, 48, 52, 56-59, 61-63, 65 - 67, 69, 72, 73, 76, 79-84.  Those should all be declared deemed admitted.

The Defendants' attempted disputation of the following statements is ineffective because they are unsupported by competent testimony: 10, 11, 16, 27, 40, 41, 46, 47, 49, 50, 51, 53, 54, 64.  These should also all be deemed admitted.

The "objections" made by the Defendants to the following statements are all invalid and should be overruled: 12-15, 17-24, 28-38, 41-45, 47, 48, 52, 56, 57-59, 61-63, 65-67, 70-72, 75-78, 85, 86.  The statements objected to should be deemed admitted.

The only objections made by Defendants which Martinez agrees with are that statements 60 and 74 are legal conclusions rather than statements of fact.  However, they are accurate and correct legal conclusions.

Consequently, all other statements of fact are not disputed and should be deemed admitted.

## Defendants' Statements of Supposed Undisputed Fact

In opposition to the "Defendants' Statement of Undisputed Facts in Support of Cross-Motion for Summary Judgment" the Martinezes incorporate herein their Statements of Undisputed Facts nos 1-86.

The Martinezes address the Defendants' statements as follows:

Statements 1-4 – Objection, irrelevant and immaterial.  Given the law that provides that the knowledge of the creditor that the consumer is represented by counsel is imputed to the debt collectors, Johnson Mark can not claim that it did not know that Martinez was represented by counsel.  See Martinez' statements nos.. 15-18.  These are therefore disputed because they falsely imply that Johnson Mark did not have imputed/constructive notice that Martinez was represented by counsel.

5.      It is true that Martinez sent this letter, but Johnson Mark ignores the fact that Martinez sent his first request for 1692g verification on January 20, 2010.  Martinez' statement no. 38.  It is therefore disputed that this was Martinez' 1692g request for verification.

6.      It is disputed as shown in detail in Martinez' statements that Johnson Mark's October 7, 2010 satisfied 1692 g or its express promise to provide "proof" or "verification" of the alleged debt.

7.      It is admitted that Judge Dever signed an order setting aside the default judgment against Capital One, but it is denied that Judge Dever expressly found or ordered that the

7

judgment had been "void" ab initio.

      8.     The Martinezes both deny that they provided Capital One with the phone number

801-696-7369 and a close examination of William Mark's declaration shows that it is without

foundation and that his statement is not in fact supported by the attached documents.

      9     Pursuant to Rule 56(f), the Martinezes can not provide an affidavit opposing this

statement until they are given the opportunity to engage in discovery.

      10.     See No. 9.

      11.     See No. 10.  Without waiver, this obviously is an automatic dialer.  No human is

involved, but rather it is done by computer.

      12.     See No. 11.

      13.     See No. 11.

      14.     See No. 11.

      15.     See No. 9.

      16.     It is admitted that in violation of the TCPA, Defendants caused the TCN

automatic dialer system to telephone Mrs.Martinez' cell phone to which she had not given

Capital One or Johnson Mark permission to call.

      17.     See No. 9. Also, Objection, irrelevant and immaterial.  This assertion does not

excuse any FDCPA or UCSPA violations made in connection with the drafting, filing and

serving of said complaint – such as 1692g violations.

18.     Objection, calls for a legal conclusion.  Without waiver, Martinez sets forth in detail in his statements the specific violations committed by the Defendants in their discovery requests.

19.     Objection, irrelevant and immaterial.  If the discovery violates the FDCPA and/or UCSPA – as specifically described in the Martinezes' statements, "intent" is irrelevant.

20.     Disputed because the phone number which Johnson Mark caused its automatic dialer to dial was Mrs. Martinez' number as per her sworn verification.

21.     Objection, irrelevant and immaterial.  If the phone calls violated the TCPA, "intent" is irrelevant.

22.     It is admitted that Mr. Martinez answered Mrs. Martinez' cell phone and discovered that Johnson Mark was calling on that line.  It is also admitted that this and all other calls made to Mrs. Martinez' cell phone number in an attempt to collect the disputed debt from Mr. Martinez violated 1692g because the Defendants had not provided "proof" or "verification" of the debt as Martinez had requested back in January of 2010.

23.     Admitted.   See No. 22.

24.     See No. 23.

25.     It is admitted that Johnson Mark's auto dialer routed the call to Johnson Mark's employees once Mr. Martinez answered the call made to Mrs. Martinez' cell pohone.

26.     It is admitted that Johnson Mark's auto dialer made these calls and that they each

constituted a new and separate violation of 1692g.

27.     Denied.  The documents attached to Mr. Mark's declaration show that this was not the original number provided to Capital One by Martinez.  The document prove that this statement is false.  Further, the Martinezes' sworn statements dispute this.

28.     It is admitted that Johnson Mark sent this letter and that it included billing statements, it is denied that this satisfied Johnson Mark's obligation to provide "proof" of the debt as required by 1692g and as promised in Johnson Mark's January 10, 2010 letter.

29.     Objection, irrelevant and immaterial.  This purported defense that something was done "as a natural component to collecting the debt and not to harass Plaintiffs" is not a defense.  It also calls for a legal conclusion.  Given the violations identified in Martinez' statements of undisputed facts, this statement is disputed.

30.     Objection, irrelevant and immaterial.  The TCPA is a strict liability statute and "intent" is irrelevant.

31.     See No. 30.  Further, the documents attached to Mr. Mark's declaration prove that this number was not the original phone number on Martinez' application.  The Martinezes each deny under oath that they ever provided this number to Capital One.

32.     This is an admission that the TCN is an auto-dialer technology.

33.     See No. 30.

34.     See No. 30.

35.     Undisputed for the purposes of this motion.

36.     This is an admission that Johnson Mark obtained Mrs. Martinez' cell phone number from Lexis Nexis and not directly or indirectly from the Martinezes.

37.     See No. 36.

38.     Disputed by (a) the Martinezes' sworn statements of fact and (b) the face of the documents attached to Mr. Mark's declaration (which show that this number was not the number on Martinez' original application)

39.     This is an admission that Johnson Mark's auto dialer placed a call to Mrs. Martinez' cell phone without permission in violation of the TCPA.  It is also an admission of another 1692g violation.

40.     Disputed by the Martinezes' sworn statements of fact.

41.     Objection, irrelevant.  See No. 30

42.     Undisputed for the purposes of this motion.

43.     Undisputed for the purposes of this motion.

44.     Objection, irrelevant.  "Intent" is irrelevant due to the fact that the FDCPA is a strict liability statute.

45.     Undisputed for the purposes of this motion because this is not a procedure to catch a failure to follow this procedure.  With respect to a "bona fide error" defense, the issue is whether Johnson Mark had a procedure in place to catch and correct a failure to follow this initial

procedure.  Johnson Mark admittedly failed to follow the procedure set forth in this paragraph.

That failure is only excused if there were some other procedures in place to catch and rectify this

first mistake.  Johnson Mark does not describe any.

       46.     See No. 45.

       47.     See No. 45.

       48.     See No. 45.

       49.     See No. 45.

       50.     See No. 45.

       51.     See No. 45.

       52.     See No. 45.

       53.     See No. 45.  It is reiterated that these nos. 45-53 describe Johnson Mark's

ordinary method of dealing with the receipt of a 1692g request for verification.  Johnson Mark

failed to follow these procedures with respect to Martinez' first admittedly received request for

verification.  Johnson Mark fails to identify procedures which will catch such a failure and

thereby avoid/ avert violating the FDCPA.  Such a procedure could and should have been to

review the file again before each new debt collection activity is undertaken to see if a verification

letter had been received and overlooked.  This is the type of procedure that the bona fide error

defense requires.  A procedure to catch and rectify mistakes.  Johnson Mark did not have any

such procedure and proceeded to blithely commit numerous violations of 1692g that could and

should have been avoided by a simply rechecking of the file.

54.     Admitted.

55.     Objection, calls for a legal conclusion and asserts a false legal conclusion.

Martinez' statements and arguments dispute this in detail.

# ARGUMENT

## I.     No Order of Judge Dever "Declared [the Default Judgment to be] Void"

The Martinezes' memorandum in support of their motion for summary judgment deals

with this issue at length.  Those arguments will not be repeated herein.  Judge Dever's order did

not declare the default judgment to be void.

Further, it is not "undisputed that Martinez did not properly serve Capital One."  Martinez

believes that Judge Dever's ruling was incorrect and will challenge it on appeal if necessary.

(See Martinez' memorandum in opposition to the motion to set aside).

## II.     It is Irrelevant that Martinez Held Himself Out as a Pro Se Litigant

Martinez' memorandum cites the Court to case law that states that the knowledge of the

creditor that a consumer is represented by counsel is imputed to the debt collectors which the

creditor subsequently retains to collect the debt. Micare v. Foster & Garbus, 132 F. Supp. 2d 77

(N.D. N.Y. 2001; Powers v Professional Credit Servs. Inc., 107 F. Supp. 2d 166 (N.D.N.Y.

2000)("to allow a creditor to hire a debt collector after receiving actual knowledge that the

13

consumer had retained legal representation for that debt and then withhold knowledge of this representation from the debt collector would blatantly circumvent the intent of the FDCPA").

The Defendants do not cite this Court to any case law which holds otherwise.

Rather, they argue that because Martinez contacted them "pro se" the defendants did not know that he was represented by counsel.

This argument is irrelevant.  The Johnson Mark defendants are charged with constructive notice that Martinez had been represented by counsel with respect to this debt because Capital One had this actual knowledge via Capital One's admitted receipt of the first summons and complaint.

## III.   Johnson Mark's 1/7/10 Letter Violated the FDCPA in Multiple Ways

Martinez asserts in his memorandum that Johnson Mark's 1/7/10 letter violated the FDCPA in the following ways:

1.      The letter violated 1692c(a)(2) because Johnson Mark had constructive notice that Martinez was represented by an attorney and was thus barred from contacting Martinez directly.

2.      The statement: "To resolve this matter, you must either pay the Total Amount Due ... or call the law firm .. " and work out arrangements for payment"  violated § 1692e of the Fair Debt Collection Practices Act, which prohibits false, deceptive and misleading communications, because it falsely claims the only way to resolve the matter was to pay or make arrangements to pay the disputed debt.  Martinez could obviously choose to sue Capital One to

resolve this debt, rather than choose either of these options.

3.      This letter misrepresented the amount of the debt because (a) due to the Capital One's

failure to answer and default, Martinez did not owe anything to Capital One, and/or (b) it

included amounts which were not in fact due and owing and/or charges which were unreasonable

and inaccurate. 1692e, 1692e(2)

4.      The letter also stated "At this time, no attorney with this firm has personally

reviewed the particular circumstances of your account and no decision has been made to

file a lawsuit."  This statement violated § 1692e of the Fair Debt Collection Practices Act

("FDCPA"), which prohibits false, deceptive and misleading communications, because it

conveys the deceptive, misleading and contradictory impressions that a lawyer is making

a demand on the consumer, while also stating no attorney has reviewed the file. See, e.g..

, Miller v. Wolpoff &Abramson, LLP, 321 F.3d 292, 292-93 (2nd Cir. 2003); Taylorv.

Perrin, Landry, DeLaunay & Durand, 103 F. 3d 1232, 1236-37 (5th Cir. 1997); Avila v.

Rubin, 84 F.3d 222, 228·-30 (7th Cir. 1996);  Clomon v. Jackson, 988 F..2d 1314,

1314-15 (2nd Cir. 1993), and Lesher v. Mitchell Kay (3rd Circuit, June 21, 2011).

Johnson Mark's memorandum does not address the first three identified violations.

Johnson Mark is therefore deemed to have committed those FDCPA violations and summary

judgment for Martinez should be granted.  (Only one FDCPA violation needs to be shown/

proven)

15

Johnson Mark's memorandum attempts to dispute No. 4.  It is interesting that Johnson Mark's argument wraps  up with the assertion that Johnson Mark was "following the law" which existed at the time.  This is an admission that recent circuit court cases have ruled that this type of conduct violates the FDCPA.

The problem for the defendants is that a mistake of law is not a bona fide error and strict liability applies.

## IV.   Johnson Mark Has Not Made Even a Prima Facia Showing of a Bona Fide Error Defense

Johnson Mark admits that it has the burden of showing that its violations of the FDCPA were "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

Johnson Mark asserts this defense with respect to its failure to provide Martinez with any "proof" or "verification" of the debt after Martinez sent his first 1692g request for verification, and then its violation of 1692g(b) over a half-dozen times.

The question is not whether Johnson Mark knew that it should read its mail and notice when a request for validation came in.  Clearly Johnson Mark as a sophisticated debt collection law firm knew this.

The question is – if Johnson Mark blew it and did not initially properly process the request for verification, what procedures did it have in place to keep it from committing the multiple violations of 1692g(b) which occurred thereafter?  EXACTLY NONE.

The law requires "procedures reasonably adapted to avoid any such error."

Each time Johnson Mark contemplated a new debt collection activity after Martinez had sent his 1692g request for verification, what procedures did Johnson Mark have in place to make sure that engaging in each of those new debt collection actions did not violate 1692g(b)?

Johnson Mark did not have any.  Johnson Mark does not describe any steps taken before each debt collection action is commenced to make sure that the new debt collection action will not violate 1692g(b).

Johnson Mark could and should have had a policy that the file be double checked to make sure that there was no outstanding request for verification to which no response had been made BEFORE each new debt collection action is/was taken.

Johnson Mark did not implement even this simple procedure.

If Johnson Mark had implemented such a simple procedure, one presumes that none of the 1692g(b) violations would have occurred.

Johnson Mark has not made even a prima facia showing of a bona fide error defense in these regards

Martinez also argues that Johnson Mark's 1/7/10 letter promised Martinez that if he requested verification, Johnson Mark would (a) provide Martinez with "proof" of the debt and (b) not take any debt collection actions until Johnson Mark provided Martinez with said "proof." Martinez alleges that he relied upon the offer/ promise when he requested verification. Martinez

alleges that Johnson Mark violated this promise and agreement by (a) failing for nine months to provide Martinez with even an attempted "verification"of the debt and (b) engaging in a dozen or so collection actions before any "verification" of the debt had been provided.

This is simple – and clear –  contract/promissory estoppel law.

Johnson Mark is liable for breaching this agreement and breaking this promise.

The "bona fide error" defense does not protect Johnson Mark from liability for violating these is promises.

## V.    Johnson Mark's Phone Calls Violated the FDCPA

Johnson Mark admits making four or five phone calls to a number which the Martinezes declare was Mrs. Martinez' cell phone number – which the Defendants can not deny.

These calls violated the FDCPA as follows:

1.    Due to Capital One's knowledge that Martinez was represented by counsel, which by law was imputed to the Defendants, these calls violated 1692(a)(2); and

2.    Due to the Defendants' failure to provide Martinez with "proof" or "verification" of the debt after he requested it, these calls violated 1692g(b).

The Martinezes did not give this phone number to Capital One.  See the documents attached to Mr. Mark's declaration.  They prove that this was not the phone number on the original application.  It was obtained by a lexis nexis search.  The Defendants did not have "permission" to call this number.

In any event, the foregoing FDCPA violations are clear and unequivocal and justify summary judgment.

## VI.   The Drafting, Filing and Service of the Summons and Complaint Violated the FDCPA

FDCPA 1692g(b) bars any further debt collection activity after "proof" or "verification"of the disputed debt has been requested by the consumer.  The Defendants admit that they received Martinez' request for verification.  Pursuant to 1692g(b), they were barred from taking any further steps to collect that disputed debt until they had provided the requested "proof" and "verification."  It is admitted that they did not even attempt to do so until October of 2010.  The summons and complaint were drafted, filed and served before that.  These were undisputably actions to collect the disputed debt.  The drafting, filing and service of these documents on Martinez constituted violations of 1692g(b) which justify granting summary judgment in favor of Martinez.

Johnson Mark knew that this was the correct construction of 1692g(b), because its 1/7/10 demand letter represented and promised Martinez:  "if you **request proof of the debt**" within 30 days of the January 7, 2010 letter, Johnson Mark will "suspend our efforts to collect the debt (**through a lawsuit, arbitration or otherwise**) until we mail the requested information to you."

The cases cited by Defendants are inapposite or misconstrued or just plain wrong.

For instance, the Court in an unpublished opinion in <u>Raymond Bey v. Daimer Chrysler Services of North America</u>, 2006 U.S. Dist. Lexis 8261, incredibly held that serving a summons was not a "debt collection activity."  If the lawsuit seeks to collect a debt, then of course the service of the summons and complaint on the consumer is a "debt collection activity."  Johnson Mark knows this and promised that they would not sue Martinez until they provided the requested "proof" or "verification" to Martinez.

Another example of incorrect analysis is the Defendants' argument that the summons and complaint are not "communications" under 1692g.  This is true and also false.

1692g requires a debt collector to make certain disclosures within five days of the debt collector's "first communication" with the consumer.  The FDCPA was amended to provide that for the purposes of determining when these disclosures must be made, the service of the summons and complaint will not be considered to be the "first communication."

This does not mean that if the 1692g notice had previously been given – as was done in this case and not complied with, that the service of a summons and complaint thereafter would not be considered to be an action to collect the debt which would violate 1692g(b).  Again, from Johnson Mark's own letter,  "if you **request proof of the debt**" within 30 days of the January 7, 2010 letter, Johnson Mark will "suspend our efforts to collect the debt (through a lawsuit, arbitration or otherwise) until we mail the requested information to you."

If a consumer has given the debt collector a "cease and desist" communication pursuant

to 1692c( c), the debt collector is barred from thereafter "communicating" with the consumer. Cases have held, and rightly so, that this bar against "communications" sent to the consumer does not apply to later filed lawsuits and the service of the summons and complaint and other papers therein.  The debt collector can not attempt to collect the debt via telephone calls or letters, but it can proceed to sue the consumer.

The cases that hold that under these circumstances a summons, complaint and other papers sent out during a lawsuit are not "communications" with respect to 1692c( c) do not apply to the 1692g(b) bar against further debt collection activity.  The language quoted by the Defendants from the Heintz case related to 1692c( c) and not any other section of the FDCPA.

These cases should also not be misconstrued to create some sort of general "litigation privilege" or exception to the otherwise clear applicability of the FDCPA.

## VII.  The FDCPA Applies to Lawsuits and Actions Taken in Lawsuits

The FDCPA applies to all debt collectors and to all debt collection activity.  The Defendants try to say that it does not apply to their actions taken during a debt collection lawsuit. This is not true.  The Heintz v. Jenkins case so holds.

As noted above, there are cases relating to 1692c( c) which hold the bar against communicating with a consumer does not apply to subsequent litigation and documents sent out during that litigation.  Those cases relate solely to that section of the FDCPA.  They do not – and should not –  relate to or limit the applicability of any of the other sections of the FDCPA.

21

It is critically important that the prohibitions against misrepresentation, abuse, harassment, improper contact with a represented consumer and the like found in the FDCPA all be applicable to actions taken by lawyers while they are prosecuting a debt collection lawsuit.

Although there may be a few judges who have held otherwise, their decisions are unwise and thwart the clear and important public policies behind the adoption and application of the FDCPA – which are to protect consumers from the abuses which are specifically proscribed / identified in the FDCPA. Any judicial construction which limits the application and enforceability of the FDCPA is and/or would be an improper judicial repeal of this critically important consumer protection legislation.

There is no general litigation privilege with respect to the FDCPA.

There is no general litigation exception to the FDCPA.

The Martinezes have identified numerous actions taken by these lawyer debt collector defendants during the course of their prosecution of the  Capital One v Martinez  lawsuit which violated the FDCPA. If the defendants in fact committed those acts, and if those acts did violate the clear provisions of the statute, the attorney lawyer debt collectors are subject to liability to Martinez under the FDCPA. Attached hereto as Exhibit C is a list of cases which found the FDCPA applicable to debt collection lawsuit conduct.

## VIII. Johnson Mark's Supposed "Verification" Was Incomplete and Ineffective

The Martinezes briefed this issue in their main memorandum and will not repeat

themselves herein.

It is true that Judge Stewart followed some 9th Circuit cases which have significantly gutted the 1692g requirement that a debt collector "verify" the debt if requested.  These decisions are contrary to the plain language of the statute and thwart its express purpose.

Further, Johnson Mark knew the correct standard when it promised Martinez that it would provide him with "proof" of the debt if requested.

Johnson Mark did not comply with 1692g's requirement that it "verify" the debt.

Johnson Mark did not comply with its promise that it would provide Maratinez with "proof" of the debt.  Martinez is entitled to summary judgment as a result and the Defendants' motion should be denied on this point.

Strangely, Johnson Mark includes in this section an attempt to dispute Martinez' claim that the 1/7/10 letter was misleading and violated 1692e's prohibition against making any false, deceptive, or misleading representation in connection with the debt collection effort.

Martinez will not repeat herein its detailed analysis of why the 1/7/10 letter violated 1692e and f.

However, Martinez will note that while it is true that a debt collector attorney does not have to advise a consumer as to the consumer legal rights – IF THE DEBT COLLECTOR ATTORNEY DOES REPRESENT TO THE CONSUMER WHAT HIS RIGHTS ARE, THE DEBT COLLECTOR CAN NOT MISREPRESENT WHAT THOSE RIGHTS ARE.

This is the problem with Johnson Mark.  They do not realize that when they are dealing with a pro se consumer, the FDCPA prohibits them from telling the consumer something that is not true.  Johnson Mark can not tell a consumer that the consumer's only options are A and B, when the truth is that the Consumer also has options X, Y and Z.

Johnson Mark's 19/7/10 letter and also its discovery requests contain misrepresentations because they are not complete and fair.

## IX.   The AutoDialed Telephone Calls to Mrs. Martinez' Cell Phone Violated the TCPA

The cases cited by the Defendants do find that auto dialed phone calls to a non-debtor are exempt from the TCPA.  However, other cases – such as <u>Watson v. NCO Group, Inc</u>.,462 F. Supp. 2d 641,644 (E.D. Pa. 2006) hold otherwise.  Martinez believes that the reasoning and decision in Watson is more reasonable and more thoughtfully analyzes and follows the stated purposes of the TCPA and urges this Court to adopt it.

The TCN system is clearly an auto dialer.

Mrs. Martinez never had a prior relationship with Capital One.

Neither Mr. nor Mrs. Martinez consented to receive calls at the number dialed.

The TCPA does apply and these calls violated Mrs.Martinez' right under the TCPA to privacy and not to be called for debts of Mr. Martinez on her separate phone.

# CONCLUSION

The verified and undisputed and/or ineffectively disputed – and therefore undisputed – facts in Martinezes' Memorandum in Support of Motion for Partial Summary Judgment, refute the Defendants' statement of supposed undisputed facts.

From those facts, at least the following is clear and justifies summary judgment in favor of the Martinezes:

1.      Capital One had actual knowledge that Martinez was represented by counsel in connection with the debt at issue in these lawsuits when it received by mail the first Summons and Complaint. This knowledge is imputed to Capital One's debt collectors – in this case, Johnson Mark.

This means that pursuant to 1692c(a)(2), neither Capital One directly, nor Capital One through its agents Johnson Mark and Johnson Mark, could contact Hugo Martinez about the disputed debt directly.  Johnson Mark did so.  It complains that it did not know.  That is irrelevant, because it had constructive knowledge.  Its contacts in violation of 1692c(a)(2) require the granting of summary judgment herein.

2.      Johnson Mark sent Martinez a letter on 1/7/10 which contained several misrepresentations of facts and/or was otherwise misleading.

The letter misrepresented Martinez' options.

The letter misrepresented the amount due.

25

The letter misrepresented its right to do credit reporting.

The letter clearly indicated it was from a law office, which false impression was not negated by the sentence stating no lawyer had yet reviewed the file.

For any one of these violations, Martinez is entitled to summary judgment.

3.      Johnson Mark promised in its 1/7/10 letter that it would cease all debt collection activity (including filing a lawsuit) if Martinez requested verification.

Johnson Mark breached this promise/agreement more than six times as described in Martinez' main memoradum.  These acts also violated 1692g(b).  Johnson Mark does not have an effective "bona fide error" defense to the 1692g(b) claim.  Further, there is no bona fide error defense to Martinez' breach of agreement/promise claim.  If any one of these acts is found to be a violation of either 1692g(b) or Johnson Mark's promise in its 1/7/10 letter, Martinez is entitled to summary judgment.

4.      When Johnson Mark finally realized that it needed to send out "verification," its 10/7/10 letter was ineffective under 1692g and/or did not fulfill its promised obligation in its 1/7/10 letter that it would provide Martinez with the "proof" of the debt that Martinez requested.

5.      The discovery requests were deceptive and abusive in violation of 1692e and/or 1692f.

Johnson Mark's activities during a debt collection lawsuit are not exempt from the FDCPA.  Johnson Mark has not disputed Martinez' assertions that specifically identified

aspects of Johnson Mark's discovery requests violated the FDCPA. Rather, Johnson Mark boldly asserts that the FDCPA does not apply and does not bar it from making misrepresentations to a consumer in its discovery requests.  Since Johnson Mark is not exempt from the FDCPA given the Supreme Court's decision in Heintz v.. Jenkins, it is liable to Martinez for its acts which violate the FDCPA committed during the course of the Capital One v. Martinez lawsuit.

Every provision of the FDCPA is important.

There is no unimportant violation of the FDCPA.

A single FDCPA violation justifies recovery by the consumer.

Martinez has proven that Johnson Mark committed many more than one FDCPA violation.

Summary Judgment is clearly appropriate in Martinez' favor.

The Defendants' Cross Motion should be denied.

Dated this _14th__ day of __December___, 2011

**Steffensen ❖ Law ❖ Office**

/s/ Brian W. Steffensen

**27**

**Certificate of Mailing**

I hereby certify that on the _14th__ day of __December__, 2011, that I caused  a true and correct copy of the foregoing instrument to be ____mailed, postage prepaid; and/or_____hand delivered by ____fax by __xx___ email and/or by____courier; to:

S. Grace Acosta
Bradley Madsen
SCALLEY READING BATES
HANSEN & RASMUSSEN, P.C.
15 West South Temple, Suite 600
Salt Lake City, Utah 84101
gacosta@scalleyreading.net
bmadsen@scalleyreading.net

__/s/  BWS _____

**28**