S. Grace Acosta, #9836
Jonathan H. Rupp, #11463
**SCALLEY READING BATES**
**HANSEN & RASMUSSEN, P.C.**
15 West South Temple, Suite 600
Salt Lake City, Utah 84101
Telephone: (801) 531-7870
Facsimile: (801) 531-7968
Email: gacosta@scalleyreading.net
Email: jhrupp@scalleyreading.net

Attorneys for Defendant Johnson Mark, LLC; William A. Mark; Butch Johnson.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| HUGO MARTINEZ and CLAUDIA MARTINEZ,<br><br>Plaintiffs,<br><br>v.<br><br>BUTCH JOHNSON, WILLIAM A. MARK and JOHNSON MARK LLC,<br><br>Defendants. | **REPLY MEMORANDUM IN SUPPORT OF THE JOHNSON MARK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No.: 2:11-cv-00157-DN<br><br>Judge:<br><br>Magistrate Judge: David Nuffer |

Pursuant to Rules 7 and 56 of the Federal Rules of Civil Procedure, Defendants Johnson Mark, LLC, William A. Mark, and Butch Johnson (collectively "Defendants") hereby submit this Reply Memorandum in Support of the Johnson Mark Defendants' Cross Motion for Summary Judgment.

## INTRODUCTION

The claims of Plaintiffs Hugo Martinez ("Mr. Martinez") and Claudia Martinez ("Ms. Martinez") (sometimes collectively the "Plaintiffs") must be dismissed as a matter of law. Plaintiffs fail to cite to undisputed evidence showing that they are entitled to judgment as a matter of law. On the other hand, Defendants have shown, based on the undisputed evidence that Plaintiffs' claims fail as a matter of law. Therefore, Defendants' Cross Motion for Summary Judgment must be granted.

## ARGUMENT

### I - PLAINTIFFS' FAIL TO SUPPORT FACTS WITH CITATION TO THE RECORD.

Plaintiffs have failed to dispute Defendants' statement of facts. Rule 56 of the Federal Rules of Civil Procedure states in relevant part:

> (c) PROCEDURES.
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (e) FAILING TO PROPERLY SUPPORT OR ADDRESS A FACT. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;
> > (2) consider the fact undisputed for purposes of the motion;
> > (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4) issue any other appropriate order.

Plaintiffs fail to cite to the record or otherwise show that the materials cited by Defendants do not establish the absence of a genuine dispute. Plaintiffs further fail to properly address Defendants' assertions of fact. Therefore, pursuant to Rule 56(e), the Court must deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross Motion for Summary Judgment.

**II - DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT.**

It is difficult to discern exactly which of Defendants' actions Plaintiffs believe give rise to a cause of action under the FDCPA, USCPA, or the TCPA. It is believed that Plaintiffs are intentionally ambiguous about what facts support their claims because it will make it difficult for this Court to sort through the morass and dismiss the case. In an effort to clarify the issues, Defendants outline Plaintiffs' claims below so that each claim can be responded to directly and it can be made clear why Defendants are entitled to their summary judgment. Defendant has attempted to respond to each argument raised by Plaintiffs in their opposition to the motion for summary judgment. It appears that Plaintiffs are alleging the following:

1- Defendants' 1/7/2010 letter to Mr. Martinez violated the FDCPA in that it (a) constituted direct contact with a debtor who was represented by counsel, (b) contained a misleading statement that it was not reviewed by an attorney, (c) contained a misleading statement that Mr. Martinez must pay the debt or dispute it, (d) contained a misleading statement that Defendants would cease collection efforts and provide proof of the debt if Mr. Martinez disputed the debt; and (e) misrepresented the amount of the debt;

2- The Defendants violated the FDCPA by continuing to contact Mr. Martinez despite knowledge that he was represented by counsel;

3- Following Mr. Martinez's dispute of the debt on January 20, 2012, the Defendants violated the FDCPA by (1) failing to provide timely verification of the debt and (2) continuing collection efforts prior to providing verification of the debt;

4- Defendants violated the FDCPA by failing to verify the debt at any time;

5- Defendants violated the FDCPA by drafting, filing and serving the summons and complaint;

6- Defendants violated the FDCPA by serving discovery requests and a motion for summary judgment that contained false or misleading statements;

7- Defendants violated the TCPA by using an Auto-Dialer to call Plaintiffs and by calling Ms. Martinez's cell phone; and

8- All of the above actions violated the UCSPA.

Each of Plaintiffs' arguments will be addressed in turn.

**1- Defendants' 1/7/2010 letter did not violate the FDCPA.**

*a. Defendants' 1/7/2010 letter did not constitute direct contact with a debtor who was represented by counsel.*

The undisputed evidence shows that Mr. Martinez was not represented by counsel while Defendants were attempting to collect the debt. Between their Memorandum In Support of Motion for Summary Judgment and Reply Memorandum, Plaintiffs argue at least eleven (11)

times that Mr. Martinez was acting pro se. Prior to January 10, 2011, all of Mr. Martinez's communications with Defendants were not on law firm letterhead and appeared to be only from Mr. Martinez. See Affidavit of William A. Mark at ¶ 4. Prior to January 10, 2011, Mr. Martinez did not inform Defendants that he was represented by counsel. Id. Prior to January 10, 2011, all pleadings are pro se. Therefore, Mr. Martinez was not represented by counsel.

Plaintiffs argue that Defendants should have known that Mr. Martinez was represented by counsel because on May 15, 2009, an attorney for Capital One sent a letter to Brian Steffensen asking for an extension. However, the majority of cases interpreting the FDCPA have held that it is not enough that a debt collector *should know* that the debtor was represented by counsel; the debt collector *must have actual knowledge*. See Watson v. Capital One Services, LLC, 2011 U.S. Dist. LEXIS (M.D. Fla. 2011)(dismissing claim against a debt collector because the plaintiff failed to alleged that the debt collector had actual knowledge that she was represented by counsel); see also Schmitt v. FMA Alliance, 398 F.3d 995, 997-98 (8th Cir. 2005)(affirming dismissal of complaint based on debt collector's argument that the "FDCPA requires a plaintiff to plead that the debt collector had actual knowledge of the plaintiff's representation" and declining to impute knowledge); Randolph v. IMBS, Inc., 368 F.3d 726, 729 (7th Cir. 2004)(recognizing that under the FDCPA, "Courts do not impute to debt collectors other information that may be in creditors' files…" and explaining other requirements of the FDCPA would be "unnecessary" and "pointless if creditors' knowledge were imputed to debt collectors"); Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991)(affirming the granting of summary judgment when the debt collector "had not been informed that [the plaintiff] was represented by counsel with respect to

[certain] debts"); and Bacelli v. MFP, Inc., 729 F. Supp. 2d 1328, 1344 (M.D. Fla. 2010)(granting summary judgment to a debt collector on a claim alleging a violation of Section 1692c(a)(2) of the FDCPA and recognizing that "the only courts of appeals to have addressed [the argument that knowledge should be imputed to the debt collector under the FDCPA] have squarely rejected it")(citations omitted). Contrary to Plaintiffs' completely unsupported argument, constructive knowledge of representation is not enough. A debt collector must have actual knowledge that a debtor is represented by counsel before direct contact will violate the FDCPA. In the present case, even if Mr. Martinez was represented by counsel, the undisputed facts show that Defendants had no actual knowledge of such. Therefore, Plaintiffs' claims alleging violation of the FDCPA for contacting a represented debtor lack merit. Defendant is entitled to summary judgment on this issue.

b. *Defendants' statement that their 1/7/2010 letter was not reviewed by an attorney was not misleading.*

Defendants' letter of 1/7/2010 did not contain any misleading statements. Plaintiffs argue that the letter was misleading because it was on law firm letterhead, but contained the following statement: "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account, and no decision has been made to file a lawsuit." The cases cited by Plaintiffs are inapplicable to the facts of this case because none of the letters at issue in such cases contained a disclaimer that no attorney had reviewed the matter.

As previously explained by Defendants, the clearly accepted rule is that a letter on law firm letterhead to a debtor may be misleading if no attorney has reviewed the matter, unless the

letter contains a disclaimer that no attorney has reviewed the matter. Greco v. Trauner, Cohne & Thomas, L.L.P., 412 F.3d 360 (2nd Cir. 2005), is the seminal case addressing this issue. The Greco court clearly stated the rule as follows:

> In *Miller* and *Clomon*, we established that a letter sent on law firm letterhead, standing alone, does represent a level of attorney involvement to the debtor receiving the letter. And if the attorney or firm had not, in fact, engaged in that implied level of involvement, the letter is, therefore, misleading within the meaning of the FDCPA. But of course, the implied level of attorney involvement is just that - implied. The letter's representation to the debtor is a consequence of the letter's content and presentation. And so, in these cases, we observed that a properly constructed letter with different presentation or content might connote far less actual attorney involvement, thereby satisfying the FDCPA's requirements. *See Miller*, 321 F.3d at 301 ("'The use of an attorney's signature implies - at least in the absence of language to the contrary - that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent.'") (*quoting Clomon*, 988 F.2d at 1321) (emphasis added).
>
> In contradistinction to the letters at issue in *Clomon* and *Miller*, the defendants' letter included a clear disclaimer explaining the limited extent of their involvement in the collection of Greco's debt. The defendants stated that, although "this office represents the above named BANK OF AMERICA" in the collection of Greco's debt, "at this time, no attorney with this firm has personally reviewed the particular circumstances of your account." Nothing else in the letter confused or contravened this disclaimer of attorney involvement. In light of the disclaimer, we agree with the district court that the least sophisticated consumer, upon reading this letter, must be taken to understand that no attorney had yet evaluated his or her case, or made recommendations regarding the validity of the creditor's claims. Accordingly, the district court was correct to conclude, as a matter of law, that the defendants had not used any "false, deceptive, or misleading representation or means in connection with the collection of any debt,"...
>
> *Id.* at 364-65 (emphasis added).

Courts reviewing the same issue after Greco have adopted the same rule. See Cordes v. Frederick J. Hanna & Associates, P.C., 789 F.Supp.2d 1173, 1178 fn. 4 (D. Minn. 2011)(citing Greco and stating that a law firm can send out a debt collection letter without attorney

involvement only if it "includes disclaimers that make clear that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney"); Walsh v. Frederick J. Hanna & Associates, P.C., 2010 U.S. Dist. LEXIS 138036, 6 (E.D. Cal. 2010)(citing Greco and stating "since the letter contains a clear disclaimer stating that the authors of the letter have not reviewed the file, the least sophisticated debtor would not be deceived or misled about whether counsel personally considered the debtor's filed before the letter was sent."); and Suquilanda v. Cohen & Slamowitz, LLP, 2011 U.S. Dist LEXIS 102727 20 (S.D.N.Y. 2011)(citing the same rule from Greco). In the present case, the letter sent by Defendants complied with the Greco rule. It was not misleading because it contained a clear statement that no attorney had personally reviewed the particular circumstances of Mr. Martinez's account, and no decision had been made to file a lawsuit. Therefore, Plaintiffs' claims alleging that Defendants 1/7/2010 letter was misleading because it was on law firm letterhead is without merit and Defendants are entitled to summary judgment on this issue.

c. *Defendants statement that Plaintiffs must pay the debt or dispute it was not misleading.*

Defendants' 1/7/2010 letter did not violate the FDCPA when it stated that Mr. Martinez must pay the debt or call and make arrangements for payment. Defendants' 1/7/2010 letter did not mislead Plaintiffs that the only options were to pay the full debt or make arrangements for payments because the 1/7/2010 letter also stated that Mr. Martinez had thirty days in which to dispute the debt. Obviously, disputing the debt was also an option. Thus, there were no

misrepresentations regarding Mr. Martinez's rights Defendants are entitled to summary judgment on this issue.

d. *Defendants' statement that they would cease collection efforts and provide verification of the debt if Mr. Martinez disputed the debt was not misleading.*

Defendants' statement that it would cease collection efforts until proof of the debt was provided was not misleading. The undisputed evidence shows that Defendants had a procedure in place wherein they would cease debt collection efforts until after verification of the debt was provided to the debtor. In this case, Defendants' inadvertent failure to cease collection efforts and provide verification falls under the Bona Fide Error defense as more fully set forth below and in Defendants' Memorandum in Opposition to Motion for Partial Summary Judgment ("Defendants' Memo") beginning at page 59. While there may have been a bona fide error, there was no misleading statement. Therefore, Plaintiffs' claims relating 1/7/2010 letter lack merit and Defendants are entitled to summary judgment on this issue.

e. *The amount of the debt set forth in Defendants' 1/7/2010 letter did not violate the FDCPA.*

Defendants cannot be held liable under the FDCPA for simply seeking to collect on a debt that the debtor claims is invalid. This issue was taken-up in Bleich v. The Revenue Maximation Group, Inc., 233 F.Supp 2d 469 (E.D.N.Y. 2002). In Bleich the court stated:

> In sum, the court holds that where a debt collector has included appropriate language regarding the FDCPA debt validation procedure, the allegation that the debt is invalid, standing alone, cannot form the basis of a lawsuit alleging fraudulent or deceptive practices in connection with the collection of a debt.
> Id. at 501.

Other courts have held that to maintain a claim for misstating the amount of the debt, a debtor must show that the debt collector knowingly misrepresented the amount of the debt. See McStay v. I.C. System, Inc., 174 F. Supp 2d 42, 47 (S.D.N.Y. 2001)("To successfully state a claim pursuant to *§ 1692e(2)*, [the plaintiff] must show that [the debt collector] knowingly or intentionally misrepresented the amount of the debt in its collection letters")(citations omitted); see also Anderson v. Canyon State Professional Services, Inc., 2003 U.S. Dist LEXIS 26419, 19 (D. Ariz. 2003)(the plaintiff must show that defendant was "*knowingly* attempting to collect a charge not authorized by the lease and not permitted by law"). Several courts have further held that a debt collector is able to rely on the representations and implied warranty of its client regarding the amount of the debt. See Ducrest v. Alco Collections, 931 F Supp 459, 461 (M.D. La. 1996)(A debt collector should be able to rely on the representation and implied warranty from its client that the amount was due under either the lease or the law.); Clark v. Capital & Collection Servs., 460 F. Supp 1162, 1177 (9th Cir. 2006)(if a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors.); and In re Cooper, 253 B.R. 286, 292 (N.D. Fla. 2000)(Attorneys and debt collectors are entitled to rely on the information they receive from the creditor. They are not held strictly liable when they mistakenly attempt to collect amounts in excess of what is due, if they reasonably relied on information provided by their clients).

In the present case, Plaintiffs have presented no evidence that Defendants had any reason to believe that the debt was not correct. To the contrary, Defendants were able to provide validation of the debt. See Affidavit of William Mark at ¶ 24 and Exhibit "B" thereto.

Defendants are entitled to rely on the statements provided by their client, Capital One. Thus, even if the debt was invalid, Defendants did not violate the FDCPA and Plaintiffs' claims on this issue lack merit.

**2- Defendants did not violate the FDCPA by attempting to contact Plaintiffs.**

There is no provision of the FDCPA that applied to prohibit Defendants from contacting Plaintiffs. Plaintiffs argue that Defendants were prohibited from contacting Mr. Martinez because (1) Mr. Martinez was represented by counsel, and (2) Mr. Martinez had requested verification. However, the undisputed facts show that Mr. Martinez was not represented by counsel, and even if he was, Defendants did not have knowledge of such. Additionally, Defendants failure to cease collection efforts and provide verification of the debt after the January 20, 2010 letter from Plaintiff was a bona fide error (as addressed extensively in the motion for summary judgment) and, therefore, does not give rise to a claim under the FDCPA. Defendants are entitled to summary judgment on these issues.

**3- Defendants did not violate the FDCPA following Mr. Martinez's dispute of the debt.**

Plaintiffs' claims that Defendants violated the FDCPA when they continued collection efforts and failed to provide timely verification are barred by the Bona Fide Error defense at 15 U.S.C. § 1692k(c). The Bona Fide Error defense only requires that defendants "show by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Id. The undisputed evidence shows that Defendants meet this burden. The affidavit of

Kelly Hoover thoroughly outlines the procedures that Defendants have in place to ensure that requests for verification are addressed. See Defendants' Memo at pp. 59-62. Plaintiffs' argument that Defendants should have procedures to "double check" the file is simply without any legal basis. Defendants maintained procedures reasonably adapted to avoid such errors and Defendants' failure to cease collection efforts until verification of the debt was delivered was simply a clerical error. The undisputed evidence shows that Defendants qualify for the Bona Fide Error defense.

Most importantly, Plaintiffs make no factual challenge to the application of the bona fide error defense. Plaintiffs simply argue that the procedures in place are inadequate without providing any basis for this claim. This is inadequate and this court is within its power to determine as a matter of law that the bona fide error defense applies in this case given that the facts have not been disputed.

Several other courts have determined at the summary judgment stage that the bona fide error defense shields collectors for liability for unintentional violations of the FDCPA, especially in cases where no contrary evidence is advanced in opposition to the motion for summary judgment on the issue of bona fide error defense. In the matter of Wilhelm v. Credico, Inc. et al, 519 F.3d 416 (8th Cir. 2008), the Eight Circuit upheld a grant of summary judgment on the bona fide error defense. There, the debt collected improperly charged "interest on interest" and when challenged on the practice claimed that it was a bona fide error. Id. at 420. The court noted that in opposing the debt collectors motion for summary judgment on the issue, the debtor did not "depose [the debt collectors'] president or any other employee, did not seek to discover the

identity of the former clerical employee, and offered no affidavits, depositions, or other evidence disputing [the debt collector's] affidavits." Id. at 421. Accordingly, the court had no difficulty in finding that the error was "unintentional and was caused by a bona fide error of a clerical or data entry nature." Id. The Eight Circuit noted that it was "highly relevant" that the debtor "made no attempt to dispute the facts set forth in the affidavits" of the debt collector and thus, upheld the grant of summary judgment. See also Katz v. Asset Acceptance, LLC, Goldman & Warshaw, PC and Parrella, 2006 U.S. Dist. LEXIS 86634 (noting that summary judgment was appropriate when the debtor "failed to rebut defendant's affidavits with anything but conclusory allegations"); Beattie v. D.M. Collections, Inc. et al, 754 F. Supp 383, 390 (U.S. Dist. Del. 1991)(noting that summary judgment was appropriate when the debtor offered no evidence whatsoever to rebut the allegations of the procedures that were in place to prevent violations of the FDCPA) and Howe v. The Reader's Digest Association, Inc., 686 F. Supp. 461 (S.D. N.Y. 1988) (granting summary judgment on bona fide error defense when the plaintiff failed to adduce any evidence refuting the affidavits of the debt collector which demonstrated extensive systems and procedures designed to prevent billing errors).

The same is true of the case at hand. Defendants submitted several affidavits setting forth the steps taken by the company to ensure that a request for verification of debt is properly addressed. Plaintiffs offered no counter evidence and did not request an opportunity to conduct additional discovery.[1] In short, these facts are deemed admitted and this court can find as a matter of law that the bona fide error defense applies to defeat any claim that Defendants did not

[1] Noteworthy is that the Plaintiff did request time to do additional discovery into the types of phone systems used by Johnson Mark LLC but did not make this request on any other fact.

properly respond to Plaintiffs' January 20, 2010 request for debt verification (and all the alleged violations for "contact" that derive from this error).

**4- Defendants did not violate the FDCPA by failing to verify the debt.**

Claims relating to Defendants' failure to timely verify the debt are barred by the Bona Fide Error defense. Furthermore, when Defendants did send verification of the debt, such verification was adequate. As previously pointed out by Defendants, Defendants verified the debt on October 7, 2010, by providing Mr. Martinez with Capital One's billing statements. According to the holding in Reed v. AFNI, Inc., 2011 U.S.Dist. LEXIS 3600, (D. Utah 2011), Defendants satisfied the verification requirements. Pursuant to Reed, "verification of a debt involves nothing more than the debt collector confirming in writing that the amount of the dbet being demanded is what the creditor is claiming is owed." Id. at 7-8. Certainly, Defendants' production of Capital One's billing statements satisfies the verification requirements. Thus, Plaintiffs' claims for failing to verify the debt can be resolved on summary judgment.

**5- Defendants actions in filing and pursuing the collection lawsuit did not violate the FDCPA.**

The FDCPA places no restriction on filing a lawsuit, except that if a request for verification is delivered, no debt collection activities can be taken until after verification of the debt has been delivered. Plaintiffs' claims relating to the filing of the lawsuit seem to relate only to Defendants' failure to timely verify the debt. As explained above, such claims are barred by the Bona Fide Error defense. Therefore, Plaintiffs' claims relating to the filing of the lawsuit are without merit and Defendants are entitled to summary judgment on this issue.

6- **Defendants did not violate the FDCPA by serving discovery requests or the motion for summary judgment.**

The discovery requests and motion for summary judgment filed by Defendants against Plaintiffs are typical of any debt collection case and don't contain any false, deceptive, or misleading statements. Essentially Plaintiffs argue that the discovery requests and motion for summary judgment contain false or misleading statements because they allege that Plaintiffs owe the amount pled for in the complaint. If Plaintiffs' argument was adopted any disputed debt collection action would be effectively precluded because any allegation that the debtor owes the debt could constitute a violation of the FDCPA. The FDCPA places no such restrictions and Defendants actions in prosecuting the lawsuit were proper.

Furthermore, Plaintiffs claims relating to actions taken with a state court lawsuit are barred by judicial privilege. Under Utah law, which is applicable because the lawsuit at issue was a state court case, "[t]o establish the judicial proceeding privilege, the statements must be (1) 'made during or in the course of a judicial proceeding'; (2) 'have some reference to the subject matter of the proceeding'; and (3) be 'made by someone acting in the capacity of judge, juror, witness, litigant, or counsel.'" Debry v. Godbe, 992 P.2d 979, 982 (Utah 1999). For each of Plaintiffs' causes of action, Defendants are able to meet each of the above-mentioned elements. The purported untrue, misleading, harassing, or otherwise inappropriate statements were made during a judicial proceeding to collect upon a debt. All such statements were directly related to the purpose of the suit—to collect on an outstanding debt. The "statements" were contained in

discovery requests and a motion for summary judgment, which documents were prepared by counsel and thus, constitute statements by someone acting in the capacity of an attorney.

> A statement need not be relevant or pertinent to the judicial proceeding from an evidentiary point of view for the privilege to apply. The requirement is that a statement have "some relationship to the cause or subject matter involved." *Wright v. Lawson*, 530 P.2d 823, 825 (Utah 1975) (citation omitted). Doubts should be resolved in favor of the statement having reference to the subject matter of the proceeding, *see Prosser & Keeton* § 114, at 818, because of the important purpose the privilege serves.
> *Debry*, at 984.

Accordingly, the Defendants have met all the elements of judicial privilege and Defendants are entitled to summary judgment on these claims. See also Johnson v. Riddle, 2007 U.S. Dist. LEXIS 11101 (case where the Utah District Court applied judicial privilege to bar allegations that actions in state court violated the FDCPA).

**7- Defendants did not violate the TCPA.**

For the reasons set forth in Defendants' Memo, Defendants did not violate the TCPA. First, the TCPA does not apply to Defendants because all calls made to Plaintiffs were (1) for commercial purposes, (2) did not include or introduce an advertisement or constitute a solicitation, and (3) were made to an individual with whom Defendants had a business relationship. Furthermore, Defendants did not use an automatic telephone dialing system as defined by the TCPA because their system did not store or produce telephone numbers to be called, using a random or sequential number generator.

The cases cited in Defendants' Memo clearly hold that debt collection calls are excluded from TCPA coverage. The only case cited by Plaintiffs, Watson v. NCO Group, Inc., 462

F.Supp.2d 641 (E.D. Pa. 2006), is inapplicable as it deals with a debt collector that left hundreds of prerecorded or mechanical telephone calls with someone who was not the debtor. In the present case, Defendants did not leave any pre-recorded messages. With Defendants' system, once someone answers the call, a live person speaks with the debtor. See Decl. of Neal Koffman at ¶ 12. Additionally, the case cited by Plaintiffs does not address whether the plaintiff's actions actually violated the TCPA. Rather, the only issue decided in Watson is whether the Court had subject matter jurisdiction over the matter. See Watson at 647. Thus, Watson provides no direction for this Court, and this Court must adopt the approach taken by the cases cited by Defendants.

Finally, there is not evidence that Defendants called Ms. Martinez's cell phone. As previously explained, Defendants system checks each number against Nuestar's database of cell phone numbers. See Decl. of Neal Koffman at ¶ 13. Based on Defendants' records, no call was made to any cell phone number. See id. at ¶¶ 15-21. Plaintiffs have failed to provide the number that Defendants allegedly called or provide any other evidence to support their claims. Given that the act is not even applicable to debt collection calls, these claims should be resolved in this motion for summary judgment.

**8- Defendants did not violate the UCSPA.**

*a. The UCSPA does not apply to Defendants.*

The Utah Consumer Practices Act at Utah Code Ann. § 13-11-1 *et seq.* (the "UCSPA"). does not govern lenders or attorneys acting on behalf of lenders. Pursuant to Utah Code Ann. § 13-11-1, the purpose of the UCSPA is to:

(1) to simplify, clarify, and modernize the law governing consumer sales practices;
(2) to protect consumers from suppliers who commit deceptive and unconscionable sales practices;
(3) to encourage the development of fair consumer sales practices;
(4) to make state regulation of consumer sales practices not inconsistent with the policies of the Federal Trade Commission Act relating to consumer protection;
(5) to make uniform the law, including the administrative rules, with respect to the subject of this act among those states which enact similar laws; and
(6) to recognize and protect suppliers who in good faith comply with the provisions of this act.

The UCSPA regulates only a "Provider", which is a "seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions". Utah Code Ann. § 13-11-3(6). In relevant part, "Consumer Transaction" is defined by the UCSPA as "a sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible (except securities) and insurance to, or apparently to, a person for primarily personal, family, or household purposes…" Utah Code Ann. § 13-11-3(2)(a). Defendants, were not engaged in the sale, lease, assignment, award, or transfer of goods, services, or other property. Capital One is a lender, and Defendants are the attorneys for a lender. They are not "Providers" as defined by the UCSPA. Therefore, they are not governed by the UCSPA.

In further support that the UCSPA does not apply to lenders, it should be pointed-out that, lending and collection is preempted by federal law. Specifically, the Truth in Lending Act at 15 U.S.C. 1601 *et seq.*, Regulation Z at 12 C.F.R. part 226 *et seq.*, and the FDCPA provide extensive federal regulation of credit card lenders. Federal law preempts state law where it regulates conduct in a field that Congress intended the Federal Government to occupy

exclusively or to the extent that it actually conflicts with federal law. Madsen v. Washington Mutual Bank, 199 P.3d 898, 903 (Utah 2008). In the present case, by enacting statutes that heavily regulate credit card lending and collection, Congress has made its intent clear that it intends to regulate credit card lending. It is clear that Congress intends to create consistency in lending and collection standards across the board so that commerce can flow freely from state to state. Additionally, the UCSPA itself makes clear that it does not regulate lending. Utah Code Ann. § 13-11-22 states in relevant part, "[t]his act does not apply to…credit terms of a transaction otherwise subject to this act".

Defendants do not qualify as Providers under the UCSPA. Even if they did, the UCSPA is preempted by Federal Law, and even if it was not, credit terms are specifically excluded from the UCSPA. The UCSPA does not apply and defendants are entitled to summary judgment on this issue.

*b. Defendants did not violate the UCSPA.*

Plaintiffs allege that Defendants violated the UCSPA by making false or deceptive representations or engaging in unconscionable conduct. Even though the UCSPA does not apply, even if it did, as set forth previously, the undisputed facts show that Defendants did not engage in any false or deceptive representations, or unconscionable conduct. Therefore, there was no violation of the UCSPA and Defendants are entitled to summary judgment.

## CONCLUSIONS

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment must be denied and Defendants' Cross Motion for Summary Judgment must be granted.

DATED this 6 day of January 2012.

**SCALLEY READING BATES HANSEN & RASMUSSEN, P.C.**

/s/ Grace Acosta

S. Grace Acosta
Jonathan H. Rupp
Attorneys for Defendants
Johnson Mark, LLC; William A. Mark; Butch Johnson