IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HUGO and CLAUDIA MARTINEZ,<br><br>    Plaintiff;<br><br>vs.<br><br>BUTCH JOHNSON, WILLIAM A. MARK, JACOB H.B. FRANKLIN, JOHNSON MARK, LLC, DOES 1-50;<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT**<br><br>Case No. 2:11cv157-DN<br><br>District Judge David Nuffer |

## INTRODUCTION

This case arises from Plaintiff Hugo Martinez's alleged debt on a credit card issued by Capital One Bank.  Plaintiffs Hugo and Claudia Martinez, husband and wife, claim the defendants' contacts and conduct in attempting to collect the credit card debt violated the Fair Debt Collection Practices Act ("FDCPA"), the Utah Consumer Sales Practices Act ("UCSPA"), and the Telephone Consumer Protection Act of 1991 ("TCPA").   Defendants Butch L. Johnson and William A. Mark, lawyers in the defendant law firm, Johnson Mark LLC, along with lawyer and defendant, Jacob H.B. Franklin, initiated and pursued the debt collection processes on behalf of their client, Capital One.

Plaintiff Hugo Martinez seeks his actual damages from each defendant, individually and separately, in an amount not less than $2,000, plus a $1,000 statutory penalty; plaintiff Claudia Martinez seeks an amount between $500 and $1,500 from each defendant, individually and separately, for each violation of the TCPA; and both plaintiffs seek recovery of punitive damages and their attorney fees and costs.   Plaintiff Hugo Martinez also requests an order declaring that he

owes nothing to Capital One, and requiring the defendants to delete all negative credit reporting relating to the disputed credit card debt.[1]

## Motions for Summary Judgment

The parties have filed cross-motions for summary judgment.[2]   Plaintiffs move for partial summary judgment to recover a minimum of $2,000 from each defendant for actual damages arising from the UCSPA violations; for imposition of a $1,000 statutory penalty for violating the FDCPA; for $2,000 in TCPA penalties in favor of Claudia Martinez and against Johnson Mark, and against Johnson and Mark individually; and for an award of costs and fees incurred to date. Plaintiffs reserve the issue of higher actual damages, punitive damages and treble TCPA damages for future proceedings.[3] Defendants move for summary judgment on all claims alleged by the plaintiffs.[4]

## STANDARD OF REVIEW

A federal court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[5]

> Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.   Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); McCarty v. Gilchrist, 646 F.3d 1281, 1284–85 (10th Cir.2011); see also Fed.R.Civ.P. 56(a).   A factual dispute is only "genuine" if the evidence and the inferences drawn from it, viewed in the light most favorable to the nonmoving party, are "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also Kerber v. Qwest Group Life Ins. Plan, 647 F.3d 950, 959 (10th Cir.2011).[6]

---

[1] Doc. No. 47.

[2] Doc. Nos. 37 & 51.

[3] Doc. No. 37.

[4] Doc. No. 51.

[5] Fed. R. Civ. P. 56(c)(2).
[6] Arencibia v. Barta, 2012 WL 4513233, 3 (10th Cir. October 3, 2012).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[7]  Once the moving party has shown that the nonmoving party's case is not supported by the evidence, the nonmoving party "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."[8]

## FACTUAL BACKGROUND

In addition to the present federal case, two state lawsuits were filed as a result of efforts to collect on Hugo Martinez's alleged Capital One credit card debt:

- Hugo Martinez v. Capital One ("*Martinez v. Capital One*"), which was filed in Utah's Third District Court, Salt Lake County, on August 13, 2009, seeks compensatory and punitive damages arising from alleged unauthorized charges on Hugo Martinez' Capital One credit card and an order requiring Capital One to withdraw any negative credit reports.[9]

- Capital One v. Hugo Martinez ("*Capital One v. Martinez*"), which was filed in Utah's Second District Court, Weber County, on October 6, 2010, seeks breach of contract damages in the amount of $980.62 plus $139.66 for accrued interest--the unpaid balance on Hugo Martinez' Capital One credit card.[10]

Final judgment has not been entered in either state case, but the state filings are relevant to fully understanding the parties' arguments in this case—particularly issues related to notice of Hugo Martinez's representation by counsel and notice regarding the validity of the Capital One debt.  To that end, the parties have filed pleadings, motions, orders, and docket sheets from both state cases as part of the evidentiary record in this action.

Plaintiffs, Hugo and Claudia Martinez, are married and live in Weber County, Utah. Defendants Butch L. Johnson and William A. Mark are licensed to practice law in the State of Utah and are principals with the law firm of Johnson Mark LLC, a Utah limited liability company.

---

[7] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[8] Anderson v. Liberty Lobby, 477 U.S. 242, 256   (1986).

[9] Doc. No. 39-1, Ex. C at 11-16 of 57; Doc. No. 39-2, Ex. K at 29-33 of 56.

[10] Doc. No. 39-2, Ex. I at 5-6 of 56 & Ex. O at 47-48 of 56.

Defendants Johnson and Mark obtain assistance from Jacob H.B. Franklin, a Utah attorney, to carry out consumer debt collection processes in Utah.[11]

Capital One issued a credit card to Hugo Martinez on March 29, 2008.   Hugo Martinez claims that in early 2009, unauthorized charges for goods and services were charged on that card, and despite his complaints about these unauthorized charges, Capital One did not reverse them.[12] When Hugo Martinez refused to pay the unauthorized charges, Capital One retained United Recovery Group to collect.[13]

United Recovery sent two demand letters to Hugo Martinez, who responded by disputing the debts in writing and asking for specific information to verify the debt.   United Recovery did not provide the validation information, but did cease its collection efforts.[14]

Since his credit rating was still being impacted by unauthorized credit card charges, Hugo Martinez retained counsel to sue Capital One, and mailed a summons and complaint to Capital One's only Utah address.   Although Capital One does not have a place of business or a registered agent for service of process in Utah, when the complaint and summons were delivered to its Utah mail contractor, ACS Commercial Solutions, Inc. ("ACS"), the documents were forwarded to Capital One's litigation intake department.   Upon receipt, Capital One's counsel, Ryan S. Patterson, asked Hugo Martinez's counsel, Brian W. Steffensen, for an extension of time to answer.   This request was granted.   But when Patterson called the Utah District Court to obtain the lawsuit's assigned case number, the court could not locate any record that the lawsuit was filed. Patterson therefore sent a letter to Steffensen explaining that Capital One would not be filing an answer, and after explaining Capital One's interpretation of the underlying facts, demanded that

---

[11]  Doc. No. 37 at 8-10 of 54, ¶¶1-8.

[12]  Doc. No. 37 at 10 of 54, ¶¶ 9-10.

[13]  Doc. No. 37 at 10 of 54, ¶¶11-12.

[14]  Doc. No. 37 at 10-11 of 54, ¶¶13-14.

Hugo Martinez's lawsuit not be filed or, if it already had, that it be dismissed.   The record indicates Patterson received no response to this letter.[15]

Hugo Martinez had not filed his complaint within ten days of mailing it to Capital One in May of 2009, so he again mailed the complaint and summons to Capital One's Utah address in August of 2009.[16]   "Jeff Bridgewater," an ACS employee, signed for the complaint and summons on August 4, 2009.[17]   ACS is not authorized to accept service of process on behalf of Capital One, and the August 2009 complaint and summons were never received by Capital One's litigation intake department.[18]

*Martinez v. Capital One* was filed in Utah's Third District Court, Salt Lake County, on August 13, 2009.   The lawsuit alleges Hugo Martinez's Capital One credit card statement ending January 28, 2009 contained two unauthorized charges:   a $1.00 charge for "Creditadapter" and another $1.00 fee for "24Protect."   Hugo Martinez alleges Capital One "reported negative credit information about Plaintiff with respect to this Disputed Debt in an attempt thereby to coerce the Plaintiff in paying an inaccurate amount," resulting in "damages to his credit and emotional and mental distress in an amount to be determined at trial, but not less than $5000.00."   He further requests punitive damages of $15,000.[19]

On January 7, 2010, as debt collection counsel for Capital One, Johnson Mark sent a letter to Hugo Martinez stating he owed an account balance of $980.62 plus $64.40 in interest, for a total of $1,045.02, on his Capital One account.   The letter advised Hugo Martinez that he must either pay the amount due or work out arrangements for payment; any charges that were not disputed

---

[15] Doc. No. 37 at 11 of 54, ¶¶15-17; Doc. No. 39-1, Ex. A at .2-3 of 57 and Ex. B at 6-8 of 57, ¶¶ 6-9 & 13.

[16] Doc. No. 37 at 11-12 of 54, ¶¶ 19-20.

[17] Doc. No. 39-2, Ex. K at 30 of 56; Doc. No. 52-2 at 92-94 & 114-116 of 119.

[18] Doc. No. 39-1, Ex. B at 7-8 of 57, ¶¶ 11-12.

[19] Doc. No. 37 at 12 of 54, ¶ 21; Doc. No. 39-1, Ex. C at 11-16 of 57 & Ex. E at 21 of 57, ¶ 2.

within thirty days would be deemed valid; and if he requested validation of any debt, the debt collection efforts would be suspended until the requested information was mailed to him.   The letter explained that no attorney with Johnson Mark had personally reviewed the particular circumstances of Hugo Martinez's account and no decision had been made to file a lawsuit.[20]

Hugo Martinez, acting on his own behalf and not through counsel, mailed a letter to Johnson Mark on January 20, 2010, stating he did not owe $1,045.02 to Capital One and that he had previously told United Recovery the same thing.   The letter did not mention the *Martinez v. Capital One* lawsuit or that he was represented by counsel.   In the letter, Hugo Martinez demanded a copy of the account opening statement showing that he signed and is liable for amounts charged on the Capital One credit card account, along with copies of all account statements up through the date of his letter.[21]   Although Johnson Mark had implemented internal procedures and mechanisms to assure a response to all requests for debt verification, due to a clerical error, it did not respond to Hugo Martinez's verification demand letter sent in January of 2010.[22]

As of April 15, 2010, Hugo Martinez's lawsuit against Capital One had been wholly inactive for eight months.   The Third District Court therefore served a notice affording him 20 days to show cause why his case should not be dismissed for want of prosecution, in the absence of which the court would dismiss the case without further notice.   Acting through his attorney, Mr. Steffensen, Hugo Martinez objected to dismissal and requested an entry of default.   A default

---

[20] Doc. No. 37 at 13-15 of 54, ¶¶ 26-37; Doc. No. 39-1. Ex. F at 24 of 57.

[21] Doc. No. 37 at 15 of 54, ¶38; Doc. No. 39-1, Ex. H at 2 of 56.

[22] Doc. No. 37 at 16 of 54, ¶¶40-41; Doc. No. 52-2 at 6 of 119, ¶¶ 31-34; Doc. No. 52-5 at 4 of 5, ¶ 10..

certificate was entered against Capital One on May 6, 2010.   Thereafter, *Martinez v. Capital One* was again dormant until October 4, 2010.[23]

On July 14, 2010, defendants, acting on behalf of Capital One, drafted and signed a summons and complaint for a lawsuit against Hugo Martinez to collect the debt he allegedly owed.[24]   The papers were captioned *Capital One v. Martinez* in the Second District Court in Weber County, Utah.   Johnson Mark used its automatic dialing system to contact Hugo Martinez in an effort to resolve the breach of contract claim without filing a lawsuit.   According to the plaintiffs' evidence, telephone calls were made to Claudia Martinez's cell phone on September 2, 2010 at 2:43 p.m., on September 29, 2010 at 9:30 a.m., and on October 1, 2010 at 1:51 p.m. Claudia Martinez's cell phone number is not identified in the evidentiary record.   Neither Hugo nor Claudia Martinez had given the defendants permission to call Claudia Martinez regarding Hugo Martinez's debt.

In contrast to the plaintiffs' evidence, Johnson Mark's records indicate a call was placed to 801-XXX -8623 using its TCN technology on September 2, 2010.   The number 801-XXX -8623 was not listed on Hugo Martinez's credit card application, and was found to be invalid on September 23, 2010.[25]   Thereafter, all calls by Johnson Mark were made to 801-XXX-7369, a number listed by Hugo Martinez when he applied for the credit card, and further identified by Lexis/Nexis as Hugo Martinez's phone number.   Telephone calls were made to 801-XXX-7369 on August 26 and September 24, 2010, and TCN calls were also made to that number on September 29 and October 1, 2010.   None of these calls were answered and no messages were left.   But on September 27, 2010, Hugo Martinez answered at 801-XXX-7369, and although he

---

[23]  Doc. No. 39-2, Ex. K at 30 of 56.

[24]  Doc. No. 37 at 16 of 54, ¶39; Doc. No. 39-2, Ex. I at 4-6 of 56.

[25]  Doc. No. 52-2, Ex. C at 38 of 119; Doc. No. 52-6 at 3 of 3, ¶¶ 15-16 .

refused to provide his physical home address, he did provide an employment address where he could be served.[26]

The complaint and summons signed on July 14, 2010 were served on Hugo Martinez on September 30, 2010.[27]   By letter dated October 4, 2010, Hugo Martinez, acting on his own behalf and without counsel, asked why the amount alleged in the complaint was greater than the amount demanded in the defendants' January 2010 letter; asserted he did not owe the debt; and again requested copies of documentation showing he was a signatory on the account along with any account statements verifying the amount owed.[28]

Defendants responded on October 7, 2010 by mailing copies of Hugo Martinez's credit card statements dating back to July 29, 2008 and continuing through March 28, 2009.   The latest statement produced indicated the balance owed was $668.22 on an account with a $500.00 credit limit.   The letter accompanying the documents stated that the defendants had determined Hugo Martinez owed the debt.[29]   Capital One's records indicated the underlying credit agreement was entered into on March 29, 2008, but according to Hugo Martinez, these initial account records were not produced by the defendants in response to Hugo Martinez's verification request.[30] Capital One asserts that although Hugo Martinez received periodic credit card statements, he never disputed any of the charges in writing within 60 days of receiving the statements.[31]

Hugo Martinez moved for a default judgment in *Martinez v. Capital One* on October 4, 2010.   Relying on the purportedly undisputed allegations of Hugo Martinez's complaint, a default

---

[26] Doc. No. 37 at 18 of 54, ¶¶ 45-53; Doc. No. 52-2 at 3-5 of 119, ¶¶ 10-11 & 18-23; Ex. C at 38 of 119; Doc. No. 52-6.

[27] Doc. No. 37 at 18 of 54, ¶ 52; Doc. No. 39-2, Ex. O at 47 of 56.

[28] Doc. No. 37 at 19-20 of 54, ¶¶ 56-57; Doc. No. 39-2, Ex. N at 45 of 56.

[29] Doc. No. 37 at 20-21 of 54, ¶59 ; Doc. No. 39-2, Ex. J at 8-27 of 56.

[30] Doc. No. 39-3, Ex. T at 14 of 53, ¶6.

[31] Doc. No. 39-3, Ex. T at 14 of 53, ¶¶ 7-8.

judgment totaling $3,083.20 ($2,000.00 for actual damages plus $1,083.30 for attorney fees) was entered against Capital One on October 15, 2010.[32]

Defendants filed *Capital One v. Martinez* on October 6, 2010, and served discovery on Hugo Martinez on October 11, 2010.   Plaintiffs claim defendants also contacted Claudia Martinez's cell phone by automatic dialer on October 10, 2010; this allegation is in dispute.[33]

On November 12, 2010, Hugo Martinez, acting pro se, filed an answer in *Capital One v. Martinez*.   In his letter responding to the discovery, Hugo Martinez asked for an order stating that he need not answer or respond to discovery because he owes nothing to Capital One.   Hugo Martinez did not file his letter as a motion in *Capital One v. Martinez*.   Johnson Mark sent a letter demanding discovery responses on December 21, 2010, advising that a motion to compel would be filed if responses were not received before January 5, 2011.[34]

In *Capital One v. Martinez*, Capital One moved for summary judgment and for recovery of costs and fees on December 23, 2010.   Hugo Martinez mailed a letter to the state court on December 29, 2010, asking the court to grant his pro se motions to prohibit discovery.   The letter was filed in the court record on December 30, 2010.[35]

Up until January 10, 2011, when Steffensen entered his appearance as counsel for Hugo Martinez in *Capital One v. Martinez*, Johnson Mark believed Hugo Martinez was not represented. Steffensen filed an objection to Capital One's summary judgment motion, and filed a motion to dismiss the lawsuit.[36]

---

[32] Doc. No. 37 at 12-13, 23 of 54, ¶¶ 23-25 & 68, Doc. No. 39-1, Ex. D at 18-19 of 57; Ex. E at 21-22 of 57.

[33] Doc. No. 37 at 21 of 54, ¶ 63; Doc. No. 39-2, Ex. O at 47 of 56.

[34] Doc. No. 37 at 29 of 54, ¶ 85; Doc. No. 39-2, Ex. O at 47-48 of 56; Doc. No. 39-3, Ex. V at 48 of 53.

[35] Doc. No. 37 at 27-29 of 54, ¶¶ 83-84 & 86; Doc. No. 39-2, Ex. O at 48; Doc. No. 39-3, Ex. W at 50 of 53.

[36] Doc. No. 52-2 at 2 of 119, ¶¶ 3-6.

On January 20, 2011, Hugo Martinez, acting through Steffensen, his counsel of record, initiated garnishment proceedings against Capital One to collect the default judgment entered in *Martinez v. Capital One*.   A writ of garnishment was served on Johnson Mark, which in turn, contacted Capital One.   Prior to receiving this contact from Johnson Mark on January 25, 2011, Capital One had no actual notice of the *Martinez v. Capital One* state litigation or any purported judgment entered therein.[37]

Hugo and Claudia Martinez filed this federal lawsuit on February 10, 2011.[38]   In state court, Capital One moved to stay *Capital One v. Martinez* on February 14, 2011,[39] and on February 16, 2011, it moved to set aside the default judgment in *Martinez v. Capital One*, asserting the judgment was void because Capital One was never properly served.   Hugo Martinez's state judgment against Capital One was set aside on April 19, 2011.[40]   Capital One filed its answer in that lawsuit the same day, therein denying that it breached its contract with Hugo Martinez or violated the Utah Consumer Protection Act.[41]

---

[37] Doc. No. 39-1 at 8 or 57, ¶12; Doc. No. 39-2, Ex. K at 31 of 56.

[38] Doc. No. 47.

[39] Doc. No. 37 at 21-22 &24-26 of 54, ¶¶ 64-65, 67 & 70-72, 77-79; Doc. No. 39-2, Ex. O at 47-48 of 56; Ex. P at 49 of 56; Doc. No. 39-3, Ex. Q at 2 of 53; Ex. R at 4-5 of 53; Ex. S at 7-11 of 53.

[40] Doc. No. 37 at 16-17 of 54, ¶43; Doc. No. 39-2, Ex. L at 35-36 of 56; Doc. No. 52-2 at 78-89 of 119; Doc. No. 52-4.

[41] Doc. No. 39-2, Ex. M at 38-43 of 56.

## ISSUES PRESENTED

Based on the foregoing facts, Plaintiffs claim:

- Defendants violated the FDCPA by

  -- communicating directly with Hugo Martinez after they knew Hugo Martinez was represented by counsel;

  -- sending an incomplete, false, and misleading dunning letter to Hugo Martinez;

  -- failing to provide verification of Hugo Martinez's debt at his request prior to initiating legal action;

  -- communicating with a third party, Claudia Martinez, about Hugo Martinez's debt;

  -- harassing Claudia Martinez with telephone calls about Hugo Martinez's debt;

  -- failing to provide Hugo Martinez with sufficient verification of the alleged debt after initiating a lawsuit; and,

  -- harassing Hugo Martinez by pursuing litigation to collect the alleged Capital One debt.

- Defendants violated both the FDCPA and the UCSPA by harassing the plaintiffs, making false, deceptive, and misleading statements, and acting in bad faith while attempting to collect a disputed Capital One debt.

- Defendants violated the TCPA by placing calls to Claudia Martinez's cell phone regarding Hugo Martinez's credit card debt.

Defendants deny the plaintiffs' claims and further state that the bona fide error defense shields them from liability.

## STANDARD OF REVIEW

A federal court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[42]

> Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); McCarty v. Gilchrist, 646 F.3d 1281, 1284–85 (10th Cir.2011); see also Fed.R.Civ.P. 56(a).  A factual dispute is only "genuine" if the evidence and the inferences drawn from it, viewed in the light most favorable to the nonmoving party, are "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also Kerber v. Qwest Group Life Ins. Plan, 647 F.3d 950, 959 (10th Cir.2011).[43]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[44]  Once the moving party has shown that the nonmoving party's case is not supported by the evidence, the nonmoving party "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."[45]

## ANALYSIS

### I.   The Fair Debt Collection Practices Act

Defendants are attorneys, and while engaged in the process of collecting debts, they are considered debt collectors who are subject to the terms and liability of the FDCPA.[46]  The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against

---

[42] Fed. R. Civ. P. 56(c)(2).

[43] Arencibia v. Barta, 2012 WL 4513233, 3 (10th Cir. October 3, 2012).

[44] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[45] Anderson v. Liberty Lobby, 477 U.S. 242, 256  (1986).

[46] Heintz v. Jenkins, 514 U.S. 291, 299 (1995).

debt collection abuses."[47]   As explained in Johnson v. Riddle, 305 F.3d 1107 (10th Cir. 2002):

> The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." § 1692d.   Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. Third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." § 1692f.   Violation of these standards subjects debt collectors to civil liability, § 1692k, or administrative enforcement by the Federal Trade Commission, § 1692 l.[48]

The FDCPA is a strict liability statute.   Plaintiffs seeking recovery under the FDCPA need not show intent on the defendants' part.[49]

Plaintiffs claim the defendants violated the FDCPA at every stage of their process to collect Hugo Martinez's alleged Capital One credit card debt.   The determination of whether the defendants' conduct violated the FDCPA depends in large part on what the defendants knew at the time they committed the alleged unlawful acts.   Accordingly, the conduct throughout the collection process will be discussed in chronological order, beginning with the January 7, 2010 letter sent to Hugo Martinez.

A.     Contact With A Represented Debtor.

Plaintiffs claim the defendants' January 2010 letter to Hugo Martinez was unlawful under 15 U.S.C. § 1692c (a)(2).   Under 15 U.S.C. §1692c (a)(2), if a "debt collector knows the consumer is represented by an attorney" and has knowledge of or can readily ascertain the attorney's name and address, the debt collector may not communicate directly with the consumer absent the attorney's consent or the attorney's failure to timely respond.   On the record before the court, the defendants were never notified prior to January 25, 2011, that Hugo Martinez was

---

[47] 15 U.S.C. § 1692e.

[48] Riddle, 305 F.3d at 1117.

[49] Allen v. LaSalle Bank, 629 F.3d 364, 368 (3d Cir.2011).

represented by counsel.   Hugo Martinez had never mentioned an attorney in any of his communications with the defendants.

Plaintiffs argue that the defendants knew or should have known that Hugo Martinez was represented based on the May 2009 communications between Hugo Martinez' attorney, Steffensen, and Capital One's attorney, Patterson.   However, there is no evidence that these communications were included in the Capital One files forwarded to the defendants for initiating the collection process.   Plaintiffs argue this lack of evidence is irrelevant because any knowledge held by Capital One is imputed to its debt collectors; in this case, the defendants.   This argument is contrary to the prevailing law.   As explained in Randolph v. IMBS Inc., 368 F.3d 726 (7th Cir. 2004), the knowledge held by a principal may be imputed to an agent, "but a debt collector is an independent contractor, not the creditor's agent."[50]   As such, the Johnson Mark defendants are not presumed to know everything known by Capital One.   Absent some evidence that the Johnson Mark defendants were themselves notified that Hugo Martinez was represented by counsel, the defendants cannot be held liable under § 1692c for making direct contacts with a represented debtor.

Moreover, based on the record before the court, Steffensen never responded to Patterson's assertion that the complaint lacked any merit and should either not be filed, or if filed, should be dismissed.   Under such circumstances, even assuming the knowledge of Capital One is imputed to the defendants, Steffensen failed to respond to Capital One's communications "within a reasonable period of time," thus triggering a codified § 1692c exception to the prohibition against direct communications between a debt collector and a represented debtor.

---

[50] Randolph v. IMBS Inc., 368 F.3d 726 (7th Cir. 2004).   See also, Schmitt v. FMA Alliance, 398 F.3d 995, 997 (8th Cir. 2005).

After the defendants were notified that Hugo Martinez was represented by counsel, they no longer communicated directly with Mr. Martinez.   Defendants did not violate the FDCPA by communicating directly with Hugo Martinez when they knew he was represented by an attorney.

B.      Misleading and False Dunning Letter.

1.      The disclaimer.

Plaintiffs claim the letter received from the defendants in January 2010 was misleading and falsely indicated that amounts were owed and legal proceedings were imminent.   15 U.S.C. § 1692e provides that "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."   As applicable to the plaintiffs' arguments in this case, any communication which falsely represents the character, amount, or legal status of any debt, fails to communicate that a disputed debt is disputed, or threatens to take any action that cannot legally be taken, violates § 1692e.   "The court analyzes the challenged statements under the 'least sophisticated consumer' standard," which "ensures that the FDCPA protects all consumers, the gullible as well as the shrewd."[51]

Defendants' letter to Hugo Martinez dated January 7, 2010 was written on letterhead which clearly identified Johnson Mark as a law firm, identified Capital One as its client, and stated that any debt payments should be submitted to Johnson Mark as payment toward the Capital One debt. After stating the amount due, the letter asserts:

> To resolve this matter, you must either pay the Total Amount Due (unless it has already been paid) or call the law firm at 1-888-599-6333 and work out arrangements for payment.   If you do neither of these things, our client may be entitled to file a lawsuit against you or take further action for the collection of this debt.[52]

---

[51] Ditty v. CheckRite, Ltd., Inc., 973 F.Supp. 1320, 1329 -1330 (D.Utah 1997) (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir.1993)).

[52] Doc. No. 39-1. Ex. F at 24 of 57.

The letter then explained that Hugo Martinez had 30 days to dispute the validity of the debt and could request proof of the debt within that 30-day period.   The letter stated that if Johnson Mark received a request for proof of the debt within 30 days, the firm would suspend its efforts to collect the debt by lawsuit, arbitration or otherwise until the requested information was mailed to Hugo Martinez.   The front page of the letter contained the following statement:   "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account, and no decision has been made to file a lawsuit."[53]   The letter stated that it was sent as "an attempt to collect a debt" and was a "communication from a debt collector."[54]

"[A]ttorneys can participate in debt collection in any number of ways, without contravening the FDCPA, so long as their status as attorneys is not misleading."[55]   When a lawyer sends out a debt collection letter, he or she must either have determined that the claim is valid and the debtor is delinquent,[56] or the letter must make clear that no attorney has made that determination.[57]   In Greco v. Trauner, Cohen & Thomas, L.L.P., the court concluded that a debt collection letter on attorney letterhead which included a disclaimer stating that "at this time, no attorney with this firm has personally reviewed the particular circumstances of your account" would not lead the least sophisticated consumer upon reading the letter to believe the attorney had evaluated the case and made a recommendation regarding the validity of the creditor's claims.[58] However, the court reached its holding after considering the context of the disclaimer in light of the entirety of the letter and determining that "[n]othing else in the letter confused or contravened

---

[53] Doc. No. 39-1. Ex. F at 24 of 57.

[54] Doc. No. 39-1. Ex. F at 24 of 57.

[55] Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F. 3d 360 (2d Cir. 2005).

[56] Clomon v. Jackson, 988 F.2d 1314 (2d Cir. Mar. 17, 1993).

[57] Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F. 3d 360 (2d Cir. 2005) (finding no FDCPA violation where the attorney letter included a disclaimer stating: "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account.").

[58] Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 364 (2d Cir. 2005).

[the] disclaimer of attorney involvement."[59]

Inclusion of a disclaimer of attorney involvement is not an absolute defense to potential liability under 1692e.   Indeed, the disclaimer may be insufficient if the remainder of the letter contains statements that could be construed by the least sophisticated consumer to imply attorney involvement in validating and collecting the debt.[60]   The court agrees with the reasoning of the Fifth Circuit:

> We caution lawyers who send debt collection letters to state clearly, prominently, and conspicuously that although the letter is from a lawyer, the lawyer is acting solely as a debt collector and not in any legal capacity when sending the letter. The disclaimer must explain to even the least sophisticated consumer that lawyers may also be debt collectors and that the lawyer is operating only as a debt collector at that time.   Debt collectors acting solely as debt collectors must not send the message that a lawyer is involved, because this deceptively sends the message that the "price of poker has gone up."[61]

Review of the entire letter sent by the defendants to Hugo Martinez shows the letter does not clearly explain the role of the attorneys who authored the letter – were the defendants threatening legal action to collect a sum certain debt, or were they merely beginning the process to confirm and collect the debt?   The letter sends mixed messages.   The first line of the letter informs the plaintiff that the letter is from a law firm retained to collect the debt.   The second sentence of the letter gives the plaintiff two options – "pay the Total Amount Due … or call the law firm … and work out arrangements for payment."[62]   The remainder of the letter uses the words "lawsuit", "attorneys", "our law firm", and "our client" numerous times.[63]   To the least sophisticated consumer, this could sound like a lawsuit is imminent.   However, the letter also

---

[59]  Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 365 (2d Cir. 2005).

[60]  Gonzalez v. Kay, 577 F.3d 600, 607 (5th Cir. 2009) (noting that "[a]lthough the mere presence of disclaimer language might be dispositive in certain circumstances, the context and placement of that disclaimer is also important.").

[61]  Gonzalez, 577 F.3d at 607 (quoting Avila v. Rubin, 84 F.3d 222 (7th Cir.1996)).

[62]  Doc. No. 39-1. Ex. F at 24 of 57.

[63]  Id.

informs the defendants that no lawyer had personally reviewed the circumstances of the account, that no decision had been made to file a lawsuit, that the debt could be disputed, and that the letter was a communication from a debt collector.[64]   The letter contains a disclaimer similar to that found in *Greco*, but the disclaimer is confused and contradicted by the balance of the letter when read through the eyes of the least sophisticated consumer.

Although the statements within the letter can be reconciled or explained after study, when viewed from the perspective of the least sophisticated consumer, the letter may leave the false impression that the amount set forth is due and owing, has been validated, and legal action will be pursued by Johnson Mark unless the debt is paid.[65]   The court cannot determine, as a matter of law, whether the language of the letter sent by Johnson Mark on January 7, 2010 violated 15 U.S.C. § 1692e.   That issue is for a jury.

2.      Existence of the alleged debt.

Plaintiffs further claim that Johnson Mark's January 2010 letter was false and misleading because at the time the letter was sent, Hugo Martinez had obtained a judgment against Capital One stating he owed nothing on his credit card.   Plaintiffs therefore argue that any communication requesting payment of the debt was not only false, but also harassing and abusive in violation of 15 U.S.C. § 1692d.

The complaint in *Martinez v. Capital One* was not properly served on Capital One.   The undisputed evidence of record reflects that Capital One did not know about the lawsuit and default judgment until Hugo Martinez initiated garnishment proceedings against Capital One in January of 2011.   Even assuming Capital One was on inquiry notice of a possible lawsuit based on the

---

[64] Id.

[65] See e.g., Creighton v. Emporia Credit Service, Inc., 981 F. Supp. 411, 415 (E.D.Va.,1997) (holding that despite the validation language required under the FDCPA, the least sophisticated debtor could reasonably interpret a letter stating "Your Unpaid Bill Must Be Paid In Full To This Office Upon Receipt Of This Notice" as a false and misleading demand for immediate payment).

May 2009 complaint it received, for the reasons discussed with respect to attorney representation, that knowledge is not imputed to the defendants under the FDCPA.   Absent knowledge of the filing and judgment in *Martinez v. Capital One*, the defendants were entitled to rely upon the documentation received from Capital One for collection of the debt.   Defendants' letter was not rendered false and misleading because it stated the amount of credit card debt allegedly owed by Hugo Martinez as reported by Capital One in January of 2010.[66]

  C. Failure to Respond to Verification Request.

  1. Defendants' failure to verify the debt in January 2010.

  Within 30 days after receiving the January 2010 letter from Johnson Mark, Hugo Martinez requested information to verify the debt.   Pursuant to 15 U.S.C.A. § 1692g(b), if a consumer notifies the debt collector in writing within 30 days of receiving a debt collection letter that the debt is disputed, or the consumer requests the name and address of the original creditor, the debt collector must cease collecting the debt until the debt collector obtains verification of the debt and mails the information to the consumer.[67]

  The FDCPA does not require debt collectors to actually provide validation.   It requires that the debt collector cease all collection activity until it provides the requested validation to the debtor.[68]   Section 1692g(b) therefore "gives debt collectors two options when they receive requests for validation.   They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities."[69]

  Although Johnson Mark acknowledges receiving Hugo Martinez's request for verification

---

[66] See e.g., Simmons v. Miller, 970 F.Supp. 661, 665 (S.D.Ind.,1997) (holding defendant debt collectors did not knowingly attempt to collect an invalid debt where there was no evidence that the defendant knew the claims were time-barred and it was uncontroverted that Defendants did not know the debt had been paid).

[67] 15 U.S.C.A. § 1692g(b).

[68] Jang v. A.M. Miller and Associates, 122 F.3d 480, 482 (7th Cir. 1997).

[69] Id..

in January of 2010, it did not immediately respond to the request.   As of July of 2010, the

defendants had still not responded, but they nonetheless began debt collection efforts against Hugo

Martinez.   The FDCPA is a strict liability statute.   Therefore, the defendants' initiation of

collection activities without first providing verification information violated 15 U.S.C. §

1692g(b).[70]

> 2.      Bona fide error defense.

Defendants have raised the bona fide error defense as an affirmative defense to the

plaintiffs' claims.   The bona fide error defense "insulates debt collectors from liability even when

they have violated the FDCPA."[71]   The bona fide error provision of the FDCPA provides:

> A debt collector may not be held liable in any action brought under this subchapter
> if the debt collector shows by a preponderance of evidence that the violation was
> not intentional and resulted from a bona fide error notwithstanding the maintenance
> of procedures reasonably adapted to avoid any such error.[72]

An FDCPA defendant seeking the protection of the bona fide error defense must prove the

violation was "1) unintentional, 2) a bona fide error, and 3) made despite the maintenance of

procedures reasonably adapted to avoid the error."[73]   Debt collectors can prove a violation was

unintentional if they establish they lacked specific intent to violate the Act.

The issue of intent under the bona fide error defense is principally a credibility question as

to the defendants' subjective intent to violate the FDCPA."[74]   As such, the defendants' protection

under the bona fide error defense is a jury question, and on the record before this court, cannot be

determined in favor of the defendants as a matter of law.

---

[70] Isham v. Gurstel, Staloch & Chargo, P.A., 738 F.Supp.2d 986, 997 (D.Ariz. 2010) (finding the debt collector violated the FDCPA, as a matter of law, when it failed to provide requested debt verification information and, after a four-month hiatus, reinitiated debt collection efforts)..

[71] Johnson v. Riddle, 443 F.3d 723, 728 (10th Cir. 2006).

[72] 15 U.S.C. § 1692k(c).

[73] Johnson v. Riddle, 443 F.3d at 728.

[74] Id..

       D.      Telephone Calls as Violations of the FDCPA.

Defendants' collection efforts began with telephone calls.   Plaintiffs claim those calls were made to Claudia Martinez's cell phone, unlawfully disclosed Hugo Martinez's confidential credit information, and were harassing.   Other than one call, all calls were made to a number Hugo Martinez provided to Capital One as a contact number, and this number was verified through Lexis Nexis as assigned to Hugo Martinez.

Even assuming any or all of the calls were made to Claudia Martinez's cell phone,[75]  the defendants could not have known that and, in any event, no information was conveyed to Claudia Martinez.   No one answered the calls and no messages were left —except when Hugo Martinez himself answered the phone on September 27, 2010.   Less than ten calls were made over a period of more than two months, and never twice in one day.   Plaintiffs have failed to show that the defendants' phone calls conveyed confidential information to a third person or harassed either Hugo or Claudia Martinez.[76]   Defendants are entitled to summary judgment on the plaintiffs' claim that the phone calls violated the FDCPA.

       E.      Insufficient Debt Verification in October of 2010.

After the defendants served their complaint in October of 2010, Hugo Martinez again disputed the debt, requested copies of his statements, and requested information confirming he was a signatory on the account.   Defendants responded by providing statements dating back to when Hugo Martinez fell behind on his payments.   Plaintiffs claim this verification is insufficient under

---

[75]  The phone number of Claudia Martinez' phone is not identified in the record.

[76]  See e.g., Tucker v. CBE Group, Inc., 710 F.Supp.2d 1301 (M.D.Fla. 2010)(holding a debt collector did not violate the FDCPA by placing 57 calls to the home telephone number of the debtor's father to collect the debt from his adult daughter, where the collector never spoke to father and was not notified that the daughter could not be reached at that number, the father did not tell the collector to stop calling, only six messages were left, and no more than seven calls were made in a day); Udell v. Kansas Counselors, Inc., 313 F.Supp.2d 1135, 1143 -1144 (D.Kan. 2004)(holding, as a matter of law, that debt collectors did nothing harassing, oppressive, or abusive by placing four telephone calls over the course of seven days and not leaving any messages).

the FDCPA.

Under the FDCPA, "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt."[77] The verification under the FDCPA was intended only to "eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid."[78] A debt collector is not required to forward copies of bills or other detailed evidence of the debt.[79]

Here, the defendants provided Hugo Martinez with copies of his billing statements, which outlined the transactions made on the Capital One credit card account, the date of those transactions, the interest charged, any late payment and over-limit fees, and the outstanding balance. This information served to confirm that Hugo Martinez was the correct debtor and the amount at issue remained unpaid. Defendants' verification met the requirements of the FDCPA, and the defendants are entitled to summary judgment on this issue.[80]

F.      Cumulative Debt Collection Conduct as Harassment under the FDCPA.

Cited as a litany of harmful "punches," the plaintiffs' brief outlines every step of the debt collection process, including the filings in state court and in this court, as evidence of the defendants' harassing, repetitive, and unlawful conduct in attempting to collect the Capital One debt. They argue that since the defendants failed to respond to Hugo Martinez's initial request for debt verification, every step thereafter violated the FDCPA and, considered in the totality, was

---

[77] Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999).

[78] Id. (quoting S.Rep. No. 95-382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699).

[79] Id. *See also*, Dunham v. Portfolio Recovery Associates, LLC, 663 F.3d 997, 1002 (8th Cir. 2011)(collecting cases).

[80] See e.g., Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999) (holding debt collector adequately verified a debt by confirming with the creditor that the debt remained owed and providing the bank's computerized summary of the loan transactions); Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir.1991) (holding a debt collector complied with the FDCPA by providing computer printouts confirming the debt amounts, services provided, and dates the debts were incurred).

harassment.

Harassment under 15 U.S.C. § 1692d is defined as "conduct the natural consequence of

which is to harass, oppress, or abuse any person in connection with the collection of a debt."[81]

The FDCPA includes the following nonexclusive listing of the conduct prohibited by the Act:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person;

> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader

> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency;

> (4) The advertisement for sale of any debt to coerce payment of the debt;

> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number; and

> (6) Except as provided in 15 USCS § 1692b, the placement of telephone calls without meaningful disclosure of the caller's identity.[82]

Although the defendants initially failed to verify the credit card debt in response to Hugo

Martinez's request, that isolated incident of noncompliance does not warrant interpreting every

step thereafter as an incident of harassment.

> Even when viewed from the perspective of an unsophisticated consumer, the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor. Any attempt to collect a defaulted debt will be unwanted by a debtor, but employing the court system in the way alleged . . . cannot be said to be an abusive tactic under the FDCPA.[83]

Having considered every step of the defendants' journey to collect Hugo Martinez's

---

[81] 15 U.S.C. § 1692d.

[82] 15 U.S.C. § 1692d.

[83] Harvey v. Great Seneca Financial Corp., 453 F.3d 324, 330 -331 (6th Cir. 2006).

alleged Capital One debt, the court finds, as a matter of law, that the defendants did not harass the plaintiffs in violation of the FDCPA.  Defendants' missteps include the possible misleading nature of their initial letter, an issue for the jury, and the failure to verify the debt at Hugo Martinez's request in January of 2010, the defense to which is an issue for the jury.  But in all other respects, the defendants complied with the FDCPA as a matter of law and their motion for summary judgment will be partially granted accordingly.

## II.        The Telephone Consumer Protection Act.

Claudia Martinez alleges she is entitled to recover damages, as a matter of law, for the defendants' violation of the TCPA.  The TCPA prohibits a person or entity within the United States from initiating a telephone call to a residential or cellular telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party.[84]  It is undisputed that the defendants' TCN technology is an automated dialing system and that a call was placed by that system to an erroneous number—801 -XXX -8623—on September 2, 2010.  There is no evidence that 801 -XXX -8623 is the phone number for any cell phone associated with the plaintiffs, and no messages were left on that phone.

It is also undisputed that TCN technology was used to contact 801-XXX-7369; a number clearly associated with the plaintiffs.  As established by the evidence of record, Hugo Martinez answered that phone on August 27, 2010.  Other than the plaintiffs' statement that calls were received on Claudia Martinez's cell phone—a statement rendered vague by the plaintiffs' failure to identify the number for her phone—there is no evidence that TCN technology contacted a cell phone number for Claudia rather than Hugo Martinez.  Any calls made to 801-XXX-7369 by the defendants were not for purpose of soliciting business.  Instead, 801-XXX-7369 was a phone

---

[84] 47 U.S.C. § 227(b).

number provided by Hugo Martinez (as stated in the Capital One records) for contact him during his established business relationship with Capital One.

The TCPA required the Federal Communications Commission (FCC) to create regulations for implementing the TCPA.   Those regulations include TCPA exemptions; two of which are relevant to this case.   As stated in the FCC regulations, prerecorded calls made to any person with whom the caller has an established business relationship at the time the call is made, and calls made for a commercial purpose other than unsolicited advertisements and telephone solicitations, are not prohibited by the TCPA.[85]   As explained by the FCC, "these exemptions would also apply where a third party places a debt collection call on behalf of the company holding the debt."[86]

The undisputed evidence establishes that the defendants' calls to 801-XXX-8623 and 801-XXX-7369 were made for the purpose of collecting a debt arising from an established business relationship and were not for solicitation.   The TCPA does not regulate these calls. Defendants are entitled to summary judgment on Claudia Martinez's TCPA claims.[87]

## III.     The Utah Consumer Sales Practices Act.

Plaintiffs allege that the defendants violated the Utah Consumer Sales Practices Act.   The UCSPA prohibits "suppliers" who act "in connection with . . . consumer transaction[s]" from engaging in any "unconscionable" or "deceptive" act or practice.[88]   Contrary to the defendants' argument, Utah federal courts have held that attorneys who regularly engage in performing debt collection are considered "suppliers" carrying out "consumer transactions" under the UCSPA.[89]

---

[85] 47 C.F.R. 64.1200(a)(2)(iii-iv).

[86] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 FCC Rcd. 8752, 8773.

[87] Meadows v. Franklin Collection Service, Inc., 414 Fed.Appx. 230, 236, 2011 WL 479997, 4 (11th Cir. 2011); Hoover v. Monarch Recovery Management, Inc., 2012 WL 3638680, 12 (E.D.Pa. 2012).

[88] Utah Code Ann. §§ 13-11-5 & § 13-11-4 (1953).

[89] Brown v. Constantino, 2009 WL 3617692, 2 (D.Utah 2009) (citing Kansas and Ohio law interpreting the Uniform

After review of the record, the court finds no evidence that the defendants' telephone calls, contacts with Hugo Martinez when he was allegedly represented by counsel, and initiation of legal proceedings with associated discovery were unconscionable or deceptive actions or contacts. And the court specifically finds the defendants were not required to cease pursuit of discovery merely because the plaintiffs requested a protective order in a letter that was sent to the defendants but never filed with the court.

However, the court has already concluded that a jury must decide if the defendants' January 7, 2010 letter to Hugo Martinez was misleading and false, and whether the defendants' failure to timely provide debt verification in January of 2010 was intentional.   For the reasons discussed in the context of the FDCPA, the court likewise finds a jury must decide if these actions by the defendants were deceptive or unconscionable in violation of the UCSPA.

---

Consumer Sales Practices Act).

# ORDER

1.      Plaintiffs' motion for partial summary judgment is DENIED.

2.      Defendants' motion for summary judgment is granted in part and denied in part as follows:

      a.      FDCPA:   As to Plaintiffs' claims that the July 7, 2010 letter violated the FDCPA, and Defendants' bona fide error defense to Plaintiffs' claim for failure to verify the Capital One debt in January of 2010, the Defendants' motion for summary judgment on Plaintiff's FDCPA claims is DENIED. In all other respects, Defendants' motion for summary judgment on Plaintiffs' FDCPA claims is GRANTED.

      b.      TCPA:   Defendants' motion for summary judgment on Plaintiff's TCPA claims is GRANTED.

      c.      UCSPA:   As to Plaintiffs' claims that the July 7, 2010 letter violated the UCSPA, and the question of whether Defendants failure to verify the Capital One debt as requested in January of 2010 was deceptive or unconscionable, the Defendants' motion for summary judgment on Plaintiff's UCSPA claims is DENIED.   In all other respects, Defendants' motion for summary judgment on Plaintiff's UCSPA claims is GRANTED.

DATED this 14th day of March, 2012.


_____
David Nuffer
United States District Judge

27